| UNITED STATES BANKRUPTCY COURT Southern District of New York | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle): Daiichi Chuo Kisen Kaisha | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): 13-3324605 (NY) | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 14-4 Shintomi 2-chome, Chuo-ku, Tokyo, 104-8544 ZIP CODE | Street Address of Joint Debtor (No. and Street, City, and State): ZIP CODE |
| County of Residence or of the Principal Place of Business: | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): ZIP CODE | Mailing Address of Joint Debtor (if different from street address): ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): ZIP CODE | |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br><br>☑ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |

| Chapter 15 Debtors Country of debtor's center of main interests: Japan<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: Japan | Tax-Exempt Entity (Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts (Check one box.)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."<br>☑ Debts are primarily business debts. |
|---|---|---|

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 (*amount subject to adjustment on 4/01/16 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☑ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ 1-49 | ☐ 50-99 | ☐ 100-199 | ☑ 200-999 | ☐ 1,000-5,000 | ☐ 5,001-10,000 | ☐ 10,001-25,000 | ☐ 25,001-50,000 | ☐ 50,001-100,000 | ☐ Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☑ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☐ $100,001 to $500,000 | ☐ $500,001 to $1 million | ☐ $1,000,001 to $10 million | ☐ $10,000,001 to $50 million | ☐ $50,000,001 to $100 million | ☑ $100,000,001 to $500 million | ☐ $500,000,001 to $1 billion | ☐ More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case.)* | Daiichi Chuo Kisen Kaisha |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐   Exhibit A is attached and made a part of this petition. | X _____<br>Signature of Attorney for Debtor(s)        (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☑   No.

**Exhibit D**

(To be completed by every individual debtor.  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐   Exhibit D, completed and signed by the debtor, is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D, also completed and signed by the joint debtor, is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☐   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☑   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence.  (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form 1) (04/13)        Page 3

| **Voluntary Petition** <br> *(This page must be completed and filed in every case.)* | **Name of Debtor(s):** <br> Daiichi Chuo Kisen Kaisha |
|---|---|

| **Signatures** | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. <br> [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. <br> [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). <br><br> I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. <br><br> X _____ <br>    Signature of Debtor <br><br> X _____ <br>    Signature of Joint Debtor <br><br> _____ <br>    Telephone Number (if not represented by attorney) <br><br> _____ <br>    Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. <br><br> (Check only one box.) <br><br> ☑ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. <br><br> ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. <br><br> X _____ <br>    (Signature of Foreign Representative) <br><br>    Masakazu Yakushiji <br>    (Printed Name of Foreign Representative) <br><br>    09/29/2015 <br>    Date |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____ <br>    Signature of Attorney for Debtor(s) <br>    Melanie M. Kotler <br>    Printed Name of Attorney for Debtor(s) <br>    NORTON ROSE FULBRIGHT US LLP <br>    Firm Name <br><br>    666 Fifth Avenue <br>    New York, NY 10103-3198 <br>    Address <br>    (212) 318-3000 <br>    Telephone Number <br>    09/29/2015 <br>    Date <br><br> \*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. <br><br> _____ <br> Printed Name and title, if any, of Bankruptcy Petition Preparer <br><br> _____ <br> Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. <br><br> The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. <br><br> X _____ <br>    Signature of Authorized Individual <br><br> _____ <br>    Printed Name of Authorized Individual <br><br> _____ <br>    Title of Authorized Individual <br><br> _____ <br>    Date | _____ <br> Address <br><br> X _____ <br> Signature <br><br> _____ <br> Date <br><br> Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. <br><br> Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. <br><br> If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. <br><br> *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110, 18 U.S.C. § 156.* |



# 再生手続開始申立書

平成 27 年 9 月 29 日

東京地方裁判所民事第 20 部　御中

〒104-8544　東京都中央区新富二丁目 14 番 4 号

申立人(再生債務者)　　　第一中央汽船株式会社

代表者代表取締役　　　　藥 師 寺　正　和

〒107-6029　東京都港区赤坂一丁目 12 番 32 号　アーク森ビル

西村あさひ法律事務所(送達場所)

電話　　03-5562-8760

FAX　　03-5561-9711

上記申立人代理人弁護士　　福　岡　真 之 介

同　　　　　　　　　　　園　尾　隆　司

同　　　　　　　　　　　臼　田　啓　之

同　　　　　　　　　　　波　里　好　彦

同　　　　　　　　　　　菅　野　百　合

同　　　　　　　　　　　桑　形　直　邦

- 1 -



同　　　　　　　　　　　紺　田　哲　司　㊞

同　　　　　　　　　　　藤　　浩太郎　㊞

同　　　　　　　　　　　加　藤　貴　裕　㊞

同　　　　　　　　　　　飯　塚　　啓　㊞

同　　　　　　　　　　　髙　田　和　貴　㊞

同　　　　　　　　　　　村　上　達　明　㊞

同　　　　　　　　　　　片　山　裕二朗　㊞

同　　　　　　　　　　　川　西　皓　大　㊞

同　　　　　　　　　　　松　本　　周　㊞

〒530-0017　　大阪府大阪市北区角田町８番１号
梅田阪急ビルオフィスタワー23階
弁護士法人西村あさひ法律事務所
西村あさひ法律事務所　大阪事務所
電話　　06－6366－3013
FAX　　06－6366－3014
上記申立人代理人弁護士　　信　夫　大　輔　㊞

- 2 -

## 第1　申立ての趣旨

申立人について、再生手続を開始する

との決定を求める。

## 第2　申立人の概要

1　会社の目的

申立人は、海上運送事業を主な事業とする会社であり、「履歴事項全部証明書」(甲1)記載の会社の目的は、以下のとおりである。

(1)　海上運送事業

(2)　海上、港湾及び陸上運送の取扱業並びに代理業

(3)　船舶の売買

(4)　船舶の修理、清掃及び管理

(5)　船舶用の機器、部品、油類及び船用品並びに輸送用の荷役機材及び梱包資材の売買

(6)　船員派遣事業

(7)　産業廃棄物収集運搬業

(8)　不動産の賃貸借、売買、管理及び仲介

(9)　発電機、消火用機器、家庭用電気製品、肥料、酒類及び食料品の売買

(10)　損害保険代理業及び生命保険募集に関する業務

(11)　他の事業に対する貸付、保証及び投資

(12)　前各号に附帯し又は関連する事業

2　株式及び資本の額

平成27年3月31日時点における申立人の発行可能株式総数は12億1300

万株、発行株式は普通株式、A 種種類株式、B 種種類株式、C 種種類株式及び D 種種類株式であり、発行済株式総数は普通株式 4 億 1326 万 9551 株、A 種種類株式 3140 万株であり、B 種種類株式及び C 種種類株式は 0 株、D 種種類株式は 850 万株である。

また、申立人の資本金の額は 289 億 5841 万 150 円である。

3    主要な株主及び新株予約権者

平成 27 年 3 月 31 日時点における申立人の主要な株主の状況は、次頁のとおりである（甲 2）。

| | 普通株式(株主名) | 持株数(千株) | 持株比率(%) |
|---|---|---|---|
| 1 | 株式会社商船三井 | 68,774 | 16.64 |
| 2 | MI-DAS LINE S.A.<br>(常任代理人　洞雲汽船株式会社) | 14,707 | 3.56 |
| 3 | 三井住友海上火災保険株式会社 | 13,054 | 3.16 |
| 4 | 大和PIパートナーズ株式会社 | 10,000 | 2.42 |
| 5 | PEDREGAL MARITIME S.A.<br>(常任代理人　みずほ証券株式会社) | 8,730 | 2.11 |
| 6 | GREEN SPANKER SHIPPING S.A.<br>(常任代理人　SMBC日興証券株式会社) | 7,428 | 1.80 |
| 7 | 株式会社三井住友銀行 | 5,710 | 1.38 |
| 8 | 日本トラスティ・サービス信託銀行株式会社(三井住友信託銀行再信託分・株式会社三井住友銀行退職給付信託口) | 5,710 | 1.38 |
| 9 | 住友金属鉱山株式会社 | 5,352 | 1.30 |
| 10 | SOUTHERN ROUTE MARITIME, S.A.<br>(常任代理人　SMBC日興証券株式会社) | 4,591 | 1.11 |
| 10 | SUN LANES SHIPPING S.A.<br>(常任代理人　SMBC日興証券株式会社) | 4,591 | 1.11 |
| | その他(自己株式含む。) | 264,619 | 64.03 |
| 合計 | | 413,269 | 100 |

| | A 種種類株式(株主名) | 持株数(千株) | 持株比率(%) |
|---|---|---|---|
| 1 | 株式会社商船三井 | 30,000 | 95.54 |
| | 自己株式 | 1,400 | 4.46 |
| 合計 | | 31,400 | 100 |

| | D 種種類株式(株主名) | 持株数(千株) | 持株比率(%) |
|---|---|---|---|
| 1 | フェニックス・キャピタル株式会社 | 1,396 | 16.42 |
| 2 | 大和 PI パートナーズ株式会社 | 613 | 7.21 |
| | 自己株式 | 6,491 | 76.37 |
| 合計 | | 8,500 | 100 |

4　役員の構成

　　　現在の申立人の役員の構成は、以下のとおりである(甲1)。

代表取締役：藥師寺　正和、藤田　幸司

取　締　役：小髙　宏介、菅野　正弘、江川　俊英、桑島　進、中島　新

監　査　役：中上　光一、鑄山　賢一(社外)、石橋　廣樹(社外)

会計監査人：有限責任監査法人トーマツ

5　従業員の状況等

　　　申立人の従業員数(海外現地法人、海外事務所含む。)は 224 名である(平
成 27 年 8 月 1 日現在)。内訳は、陸上勤務従業員が 162 名(他社からの出向
社員 2 名含む。)、海上勤務従業員が 23 名、派遣・研修社員が 9 名、アルバ
イト 1 名、契約社員 3 名、海外現地法人及び海外事務所の現地採用人数が
26 名である。

　　　申立人の組織及び従業員の配置は、「組織図」(甲 3)記載のとおりである。

　　　従業員の就業状況は、「陸上従業員就業規則」（甲 4 の 1）、「船員就業規則」

（甲 4 の 2）、「陸上従業員給与規則」（甲 4 の 3。なお、船員の給与規則は船員

就業規則に記載されている。）、「退職年金規則」（甲 4 の 4）記載のとおりで

ある。


6　　本支店・営業所等

　　　申立人の本支店・事務所等の状況は以下のとおりである（甲 5）。

| 国内拠点 | 所在地 |
|---|---|
| 本社 | 東京都中央区新富二丁目 14 番 4 号 |
| 関西事務所 | 大阪市西区江戸堀一丁目 3 番 3 号　肥後橋レックスビル 4F |
| 和歌山出張所 | 和歌山市湊 1850 番地　新日鐵住金株式会社和歌山製鉄所内 |
| 鹿島出張所 | 茨城県鹿嶋市大字光 3 番地　日鉄住金物流鹿島株式会社内 |

| 海外拠点 | 所在地 |
|---|---|
| ニューヨーク事務所 | 61 Broadway Suite 2501, New York, N.Y. 10006 U.S.A. |
| ロンドン事務所 | Vintner's Place, 68 Upper Thames Street, London EC4V 3BJ, The United Kingdom |
| 香港事務所 | Office No. 706, 7th Floor, Tower2 Admiralty Centre, No. 18 Harcourt Road, Hong Kong |
| 上海事務所 | Rm3104, 31/F, Chong Hing Finance Center, 288 Nan Jing Road West, Shanghai, China |
| マニラ事務所 | Ground Floor, Enriqueta Bldg., 1675-1677 A. Mabini Street, Malate, Metro, Manila, Philippines |
| ベトナム事務所 | V-Tower, 649 Kim Ma street, Ba Dinh District, Hanoi, Vietnam |
| ブリスベン事務所(※) | Level 2, 147 Coronation Drive, Milton, QLD 4064, Australia |

　※　同事務所は、申立人自身ではなく、委託する第三者にて営業


7　子会社・関連会社等

　　　申立日現在、申立人には「子会社・関連会社資本関係図」(甲 6)記載のとおりの子会社及び関連会社が存在する。

　　　なお、申立人の子会社のうち、後記第 10 のとおり、申立人と同時に貴庁に対して再生手続開始申立てを行う STAR BULK CARRIER CO., S.A. は、いわゆる仕組船会社(パナマ等の海運に有利な税制を採用している国において設立した会社であり、それらの国の船籍で自社船を登録して保有し、又は外部から裸傭船をするが、実際には、同会社と親会社との間の定期傭船契約により、これらの船舶は親会社の事業に用いられることとなる。)である。

　　　また、国内関係会社等として、近海海運業を行う第一中央近海株式会社、外航船の船舶管理を行う第一中央マリン株式会社、内航船の船舶管理を行う第一中央内航株式会社等が、それぞれ申立人の 100%子会社として存在する。

## 第3　申立人の事業の内容及び状況等

### 1　申立人の沿革

　　　申立人は、昭和 35 年、第一汽船株式会社と中央汽船株式会社との合併によって誕生し、外航・内航を兼ね備えた不定期船中心の海運業者として誕生した。そして、その後、現在に至るまで、ドライバルク（コンテナ等とは異なり、梱包していない穀物・鉱石等のばら積み貨物のことをいう。）を主事業とする海運業者として幅広い船型ラインナップを保持し、不定期船サービスを事業の中心にしながら、周辺事業も展開するに至っている。

　　　また、国内拠点のみならず、昭和 44 年にはニューヨーク事務所を開設し、以降、マニラ事務所、香港事務所、ロンドン事務所、ベトナム事務所等を開設し、上記第 2 の 6 のとおり、世界各国に拠点を有するに至っている。

### 2　申立人の事業の概要

　　　申立人の行う事業は、外航海運業、内航海運業及びこれらに附帯する事業を行う海上運送事業である。

　　　これらの事業の概要は以下のとおりである。

### (1) 外航海運業

　　　外航海運事業は、その船型及び用途により、専用船部門及び不定期船部門からなり、それぞれ、海外航路において船舶を運航し、貨物輸送を行っている。

専用船部門は、ケープサイズ（載貨重量が約 15 万重量トン超の船をいう。）により、特定の貨物、特に国内外製鉄会社向けの鉄鉱石、石炭の貨物輸送を行う。

不定期船部門は、さらに、パナマックス（載貨重量が約 7 万重量トン超の船をいう。）及びハンディマックス（載貨重量が約 4 万重量トン超の船をいう。）により、電力会社や一般産業向けに石炭、非鉄金属等の貨物輸送を行う大型不定期船部門、ハンディサイズ（載貨重量が約 4 万重量トンまでの船をいう。）により、穀物を含む多種多様な貨物の輸送を行う遠洋不定期船部門がある。また、子会社の第一中央近海株式会社では、約 2 万重量トンまでの近海船により、東南アジア、中国、ロシア地域を中心に多種多様な貨物を輸送している。

(2) 内航海運業

各種専用船及び一般貨物船により、石灰石、セメント、石炭、砕石、穀物、雑貨等を、国内需要家向けに、国内航路において輸送している。

3　申立人の主事業たる不定期船事業について

(1) 不定期船

不定期船とは、寄港地や発着日時が予め決まっているコンテナ船等の定期船とは異なり、顧客である荷主の依頼に合わせて寄港地と発着日時が決まる船のことをいう。不定期船では、一般的に、自社又は自社の子会社の仕組船会社で保有する船舶（自社船）に加えて、自社以外の外部の船主から船を定期傭船して輸送を行うことが多い。この場合、外部の船主と海運業者の間で、定期傭船契約を結ぶことになる。そして、この定期傭船契約の中で、傭船料（利用料）を定める。

また、海運業者は、顧客（荷主）との間で、貨物を運送する旨の貨物契

約(航海傭船契約)を締結する。不定期船は、顧客にとって、必要な時に必要な場所へ貨物を運送する船である。

(2) 運賃決定方法

　　不定期船の運航会社は世界中に多数あり、その運賃単価は海上輸送の需要と船腹の供給量のバランスを基礎としてグローバルな市場で決定されることが多い。

　　主な指標として、外航海運のドライバルク船については BDI 指数(Baltic Dry Index(バルチック海運指数)。バルチック海運取引所発表のもの。以下同じ。)がある。この BDI 指数は、ドライバルク不定期船の運賃価格を取りまとめた外航不定期船運賃の指標であり(昭和 60 年当時の運賃が 1000 として基準になっている。)、この指標をもとに、航路、船型、さらに期間等を加味して、顧客である荷主と海運業者の間で運賃が個別に決定される。

(3) 船型の種類、貨物等の概要

　　申立人が保有する船舶は、平成 27 年 3 月 31 日現在、船舶の載貨重量トン数で区別される船型サイズ毎に、次の表のとおりである。

| 船型サイズ | 申立人単体所有船 | 子会社所有船（リース船含む） | 外部傭船 | 合計 |
|---|---|---|---|---|
| ケープサイズ（15万トン～） | 1 | 3 | 20 | 24 |
| パナマックス（7～15万トン） | 1 | 5 | 23 | 29 |
| ハンディマックス（4～7万トン） | 0 | 2 | 21 | 23 |
| ハンディサイズ（2～4万トン） | 0 | 13 | 34 | 47 |
| 近海船（～2万トン） | 0 | 12 | 31 | 43 |
| 内航船 | 5 | 3 | 11 | 19 |
| 合計 | 7 | 38 | 140 | 185 |

4　申立人の事業の状況

　　過去 10 年間の申立人の業績の推移は、以下のとおりである。

（単位：百万円）

|  | H18/3 | H19/3 | H20/3 | H21/3 | H22/3 | H23/3 | H24/3 | H25/3 | H26/3 | H27/3 |
|---|---|---|---|---|---|---|---|---|---|---|
| 売上高 | 80,096 | 106,314 | 166,627 | 162,539 | 100,771 | 118,270 | 127,115 | 129,246 | 152,586 | 123,790 |
| 営業利益 | 9,525 | 11,893 | 32,588 | △3,060 | △5,425 | 2,917 | △11,646 | △20,030 | △9,164 | △16,343 |
| 経常利益 | 9,525 | 12,181 | 31,306 | △2,118 | 4,262 | 1,861 | △11,775 | △20,128 | △4,366 | △14,256 |
| 当期純利益 | 5,452 | 7,361 | 21,896 | △3,635 | △3,780 | 2,101 | △12,588 | △32,301 | △13,459 | △2,660 |

連結ベース

|  | H18/3 | H19/3 | H20/3 | H21/3 | H22/3 | H23/3 | H24/3 | H25/3 | H26/3 | H27/3 |
|---|---|---|---|---|---|---|---|---|---|---|
| 売上高 | 88,142 | 119,234 | 179,918 | 175.367 | 111,842 | 130,377 | 139,047 | 140,451 | 165,155 | 152,267 |
| 営業利益 | 10,566 | 13,525 | 35,244 | 528 | △4.496 | 4,890 | △10,154 | △18,370 | △6,681 | △13,190 |
| 経常利益 | 10,069 | 13,105 | 32,969 | △928 | △5,388 | 1,166 | △11,002 | △18,563 | △8,584 | △13,966 |
| 当期純利益 | 6,044 | 7,569 | 22,878 | △2,939 | △3,877 | 1,762 | △9,281 | △31,983 | △15,429 | △3,307 |

**第 4　申立人の資産、負債その他の財産の状況等**

1　資産の状況(貸借対照表上の金額)

（平成 27 年 6 月 30 日現在）

| 科目 | 金額（百万円）単体 | 金額（百万円）連結 |
|---|---|---|
| 流動資産 | 33,076 | 41,199 |
| 有形固定資産 | 9,399 | 61,921 |
| 無形固定資産 | 44 | 117 |
| 投資その他の資産 | 11,983 | 4,054 |
| 資産の部　計 | 54,502 | 107,292 |

　　　申立人の所有する船舶については、上記第 3 の 3(3)のとおりであり、平成 27 年 6 月 30 日現在における申立人のその他の資産については、「貸借対照表(平成 27 年 6 月 30 日時点)」(甲 11)記載のとおりである。


2　債権者の状況(いずれも平成 27 年 6 月 30 日現在)

(1)　金融債権者(金融機関)

　　　計 17 名　計 24,330,768,124 円

　　　詳細は、「金融債権者一覧表」(甲 12 の 2)記載のとおりである。


(2)　その他貸付金債権者(船主・仲介業者等)

　　　計 34 名　計 2,285,933,759 円

　　　詳細は、「その他貸付金債権者(船主、仲介業者等)一覧表」(甲12の3)記載のとおりである。

(3) デリバティブ債権者

　　計 1 名　計 117,178,095 円

　　詳細は、「デリバティブ債権者一覧表」(甲 12 の 4)記載のとおりである。

(4) 社債権者(なお、いずれも私募債である。)

　　計 37 名　計 4,419,419,497 円

　　詳細は、「社債権者一覧表」(甲 12 の 5)記載のとおりである。

(5) 保証債権者

　　計 26 名　計 76,254,279,805 円

　　詳細は、「保証債権者一覧表」(甲 12 の 6)記載のとおりである。

(6) リース債権者

　　計 4 名　計 61,794,100 円

　　詳細は、「リース債権者一覧表」(甲 12 の 7)記載のとおりである。

(7) 関係会社債権者

　　計 16 名　計 5,659,182,022 円

　　詳細は、「関係会社債権者一覧表」(甲 12 の 8)記載のとおりである。

(8) 一般債権者

　　計 461 名　計 6,434,884,040 円

　　詳細は、「一般債権者一覧表」(甲 12 の 9)記載のとおりである。

(9) 公租公課債権者

計 12 名　計 44,153,536 円

詳細は、「公租公課債権者一覧表」(甲 12 の 10)記載のとおりである。

(10)　合計(甲 12 の 1)

再生債権者(別除権付再生債権者含む。)

計 596 名　計 119,563,439,442 円


## 第5　再生手続開始の原因となる事実が生ずるに至った事情

1　申立人及び申立人グループの概況

海運業者が扱う船舶の種類は一般的に大きく３つに分類され、原油等を輸送する「タンカー船」、コンテナなどを輸送する「コンテナ船」、そして、鉄鋼原料や穀物等を輸送する「ドライバルク船」に分かれる。申立人は、上記第 3 のとおり、ドライバルク(ばら積み貨物)輸送を事業の中心とした不定期船を主に扱う株式会社である。

不定期船事業において、申立人は、ケープサイズから内航船に至るまでの各船型での輸送サービス等を行っている。

また、海運業の他、船舶管理業、船用品等商品販売業や不動産賃貸業などを営む会社で構成された「第一中央汽船グループ」は、その総合力を基に、乗組員の教育、船舶の整備・荷役支援要員の配置、最新鋭機器の搭載等、ハード・ソフト両面から安全管理をも徹底し、顧客の信頼を勝ち取ってきた。


2　不定期船事業の特色

不定期船事業においては、上記第 3 の 3 のとおり、船舶を外部から借りることがある。その際に申立人のような海運業者が一般的に行う形態が定期傭船契約であり、これは、船主が、傭船者(申立人)に対して、期間を定めて、

船舶を貸し渡す契約のことである。

　船舶の傭船を受けた傭船者は、荷主(顧客)との貨物契約に基づいて、貨物を運搬し、その対価として運賃収入を得る。海運業者は、この運賃収入を原資として船主へ傭船料を支払う。

　なお、海運業者は、長期又は短期の期間を定めた貨物契約に基づいて船を運航する他、ブローカー等を通じて、1航海単位のスポットの貨物契約を受注することもある(このスポットの貨物契約に基づいて運航される船を、以下において「スポット船」という。)。外航海運におけるスポットの貨物契約運賃はその時々の市況に大きく左右されるため、長期の傭船契約に基づく固定された傭船料を負担する一方で、運搬する貨物が決定していないスポット船を多く抱える海運業者は大きな市況リスクを負うことになる。


3　海運バブル期(リーマンショック以前)

　海運市況は、平成15年後半から、BRICsをはじめとする新興国の成長、中国の自由貿易による輸入拡大に伴い、鉄鉱石や石炭などのばら積み貨物の値動きが活発化し、海運史上稀に見る好景気を迎えた。海上荷動きは急増し、特に鉄鉱石や石炭などを大量輸送するケープサイズ船の需要が増加し、大型船から小型船に至る全ての船舶需要が急拡大した。これにより新造船の価格と運賃・傭船料も急上昇し、中古船価格も高騰し、ピーク時には、ケープサイズ船の運賃は1日当り24万ドルの高値を付けることもあり、海運バブル期といってよい時期であった。

　申立人も、この海運バブル期に、船隊整備を行い、平成18年には、中期経営計画「Daiichi Vision 2010」を策定し、船隊拡大路線に転換した。平成20年3月期では、売上高、営業利益、経常利益、当期純利益、いずれの数字においても過去最高の実績を上げている。

4    リーマンショックによる市況の大幅下落

　(1) リーマンショックによる海運市況に対する影響

　　　　しかし、リーマンショックにより、拡大していた世界の荷動きは大き
　　く落ち込んだ。リーマンショック以前の平成 20 年 5 月には、BDI 指数
　　は 11,067 を記録していたものの、同年 9 月以降大幅に下落し、同年 12
　　月の BDI 指数は、666 まで下落した。

　(2) 申立人の事業に対する影響

　　　　リーマンショックによる海運市況の悪化は、不定期船事業を主たる事
　　業としており、またスポット船の比率が高くなっていた申立人の業績に
　　大きな影響を与えた。

　　　　すなわち、申立人は、リーマンショック以前、船隊拡大路線を打ち出
　　していたため、海運バブル期に船主との間で締結した長期の定期傭船契
　　約が多く、当該傭船契約に基づいた高額な傭船料を支払う必要があった
　　のに対して、貨物契約の多くはスポット契約であり、その運賃は停滞す
　　る当時の海運市況に基づいて決定される。よって、申立人が支払うべき
　　傭船料は高額であり続けたのに対し、申立人が得ることができた運賃は
　　低額にとどまり、その結果、傭船料その他運航費用が運賃収入を上回る
　　という「逆ザヤ」が生じた。

　　　　また、これに加え、拡大路線による新造船に伴う資金負担増、資金調
　　達先の不存在、円高、燃料高という要因も相まって、申立人の運航損益
　　及び資金状況は次第に悪化していった。

　(3) 当時の申立人の具体的な事業の状況

　　　　リーマンショック直後の平成 21 年 3 月期には、営業利益が前年度比
　　98.5％の減少、経常損失 9 億 2800 万円、当期純損失 29 億 3900 万円（連

結ベース）と、前年度の過去最高の業績から一転して、大幅な減収減益
となっている。

5　経営計画の策定と市況停滞長期化

(1) リーマンショック以降の申立人の状況

　　申立人は、平成 21 年以降、傭船契約の解約等を実施し、船舶経費の
低減に努め、平成 23 年 3 月期には一旦経常黒字に転換した。その後申
立人は、当時の船価低下の状況を逆手にとり、今後の市況回復を見越し
て再び船隊拡大を進めた。

　　しかし、実際には、その後も市況の低迷は続き、申立人は、平成 24
年 3 月期以降、大幅な経常損失を計上し、平成 25 年 3 月期の有価証券
報告書において「海運市況は未曾有の長期低迷に突入し、これに円高及
び燃料油価格高が重なった結果、当社グループは、市況の悪化による傭
船料の逆ざや等による損益の悪化、及び資金調達先未定の新造船に対す
る資金負担増によるキャッシュ・フローの悪化により、継続企業の前提
に重要な疑義を生じさせるような事象または状況が存在して」いる旨を
記載するに至った。

(2) 中期経営計画とその結果

　　申立人は、平成 24 年 11 月、平成 25 年 3 月期から平成 27 年 3 月期ま
での 3 カ年における中期経営計画を策定するとともに、平成 25 年には
主要株主である株式会社商船三井ほか取引先等に対して A 種種類株式を
発行し、合計で 314 億円を調達した。

　　当該中期経営計画の骨子は、①申立人の有する船隊規模を、貨物需要
が高いと見込まれる中小型船の比率を高める形で適正化し、安定した収
益を確保すること、②高コスト船約 20 隻の傭船契約の解約等によりコ

スト削減を徹底すること、③自社船の売却や種類株式発行、借入れ及び
傭船料の繰延べ等を行うことで資本を増強し、かつ運転資金を確保する
ことであった。

　しかし、中小型船の市況回復すらも芳しくなく、また、「逆ザヤ」を生
じさせているコスト高の傭船契約を解除するにしても高額な解約金支払
いが必要となった。

　その結果、申立人の平成 26 年 3 月期における経常損失は 85 億 8400
万円となり、また、当期純損失は、後記第 7 の 2 の英国での訴訟におけ
る第 1 審判決（申立人に対して損害賠償を支払うよう命ずるもの。な
お、後述のとおり控訴審では申立人が勝訴している。）に基づく 59 億円
の訴訟損失引当金繰入費用が含まれたこともあり、154 億 2900 万円に
上るものとなった（連結ベース、以下本項目にて同様）。


(3) 市況低迷の超長期化

　その後、申立人は、平成 26 年 3 月、新たに平成 26 年当時の市況等を
反映させた新中期経営計画を策定し、外部投資家等への D 種種類株式発
行による 85 億円の資金調達、船隊縮小、コスト削減、近海不定期事業
の事業再編を講じた。当該計画の中では、平成 27 年 3 月期の経常利益
を 33 億円、当期純利益を 32 億円と見込んでいた。

　この新中期経営計画の下、東南アジア、中国、ロシア地域を中心とす
る近海不定期船分野（約 2 万重量トンまでの船）は、集荷強化、効率配
船、燃料費削減、運航費削減により、収支を改善し、堅調に利益を得
た。また、内航海運業においても、効率的な配船等により、営業利益
は、平成 27 年 3 月期第 3 四半期までの累計で合計 4 億 2200 万円となっ
た。

　しかしながら、海運市況は依然低迷を続けており、平成 26 年末に

は、ケープサイズ市況で市場最安値に近いレベルまで低下し、またケープサイズ以外の他の中型船舶についても船舶の需給ギャップは拡大し、上昇の契機すらないまま市況は低迷し続けており、平成 27 年 2 月中旬には、BDI 指数が史上最低を記録した。

(4) 申立人の事業の現状

　以上の結果、海運市況の影響を大きく受けるドライバルク不定期船を事業の中心とする申立人は、当該市況の長期低迷により、収益が圧迫され、利益を生み出すことが困難な状況から抜け出せずにいる。

　平成 27 年 3 月期通期の業績としては、営業損失が 131 億 9000 万円、経常損失が 139 億 6600 万円、純損失が 33 億 700 万円(なお、固定資産(船舶)売却益 34 億 1200 万円と英国訴訟控訴審勝訴による訴訟損失引当金戻入額が 57 億 6300 万円が計上されている。)となっている。

(5) 直近における船主への依頼等

　以上のとおり、申立人は、逆ザヤ状態を解消できないまま、厳しい収益状況及び資金繰り状況に陥っていたことから、平成 27 年 2 月より、国内船主数十社に対して、傭船契約につき、傭船料 20%の減額や無償解約の要請を行い、同年 3 月以降、相当数の船主がこれに応じた。また、申立人は、自己にて保有する収益性の高い船舶等の売却も進めた。

　これらの緊急施策により、申立人は、一定の収益及び資金繰り改善を実現することができたものの、引き続き外部環境が好転しない中、抜本的な改善には至らなかった。

**第 6　再生手続開始の原因となる事実**

1　債務超過のおそれ

　　申立人は平成 27 年 6 月 30 日現在、「貸借対照表」(甲 11)によると、資産 545 億 278 万 3921 円に対し、負債 467 億 9531 万 126 円であり、制度会計上は債務超過状態にはない。

　　ただ、他方で、既に述べたとおり、長期の定期傭船契約に基づく多額の逆ザヤを抱えており、申立人は平成 24 年 3 月期以来、営業利益すら計上できず、平成 28 年 3 月期の第 1 四半期においての連結経営成績も営業損失 54 億 4700 万円、経常損失 56 億 6300 万円など、平成 27 年 3 月期に引き続き、平成 28 年 3 月期通期でも大幅な赤字となる見込みである。

　　また、中国の景気悪化等を受けて、直近の外部環境としてドライバルク不定期船市況が好転する見込みもない。

　　よって、今後、申立人の財務内容がさらに悪化し、債務超過に陥るおそれは高い。


2　支払不能のおそれ等

　　申立人は、上記第 3 の 4 のとおり、これまで多額の赤字を計上し続けており、それに伴い、既に資金も流出してしまっている。

　　他方、申立人の借入金(海外の仕組船会社による借入への保証を含む。)及び社債の額は平成 27 年 6 月 30 日現在、約 1074 億 757 万円あるが、申立人は、上記資金状況下においては、これらの債務について約定どおりの弁済を継続することが困難であり、早晩、その一部に係る履行遅滞により、その全額について期限の利益を喪失し、支払不能に陥るおそれが高い。

　　また、仮に、所有する船舶等を売却して弁済することができたとしても、申立人の事業を継続するにつき著しい支障を来すことは明らかである。

3　小　　括

以上に鑑みれば、申立人において、破産手続開始の原因となる事実(破産
法 16 条 1 項)たる債務超過及び支払不能の生ずるおそれがあること(民事再
生法 21 条 1 項前段)、事業の継続に著しい支障を来すことなく弁済期にある
債務を弁済することができないこと(民事再生法 21 条 1 項後段)のいずれに
ついても明らかである。


第 7　申立人に関する訴訟及び法人財産に関してなされているその他の法的手続
又は処分

1　申立人の財産に係る手続の不存在

申立日現在、申立人及びその財産に関し、破産手続、再生手続、特別清算
手続、強制執行、仮差押え、仮処分、担保権実行としての競売は行われてい
ない。


2　申立人を当事者とする訴訟手続

申立日現在、「係属訴訟一覧表」(甲 13)のとおり、申立人を当事者とする
訴訟及び仲裁が存在する。以下、同一覧表番号 1 に記載する損害賠償請求訴
訟について説明する。

(1)　概要

申立人が、荷主との間で締結した貨物契約によって委託を受けた鉄鉱
石の海上運送のため、船主(China National Chartering Corp.)から定
期傭船したケープサイズ船「オーシャン・ビクトリー号」が、平成 18 年
10 月 24 日、荷揚港の鹿島港外にて坐礁し、同年 12 月 27 日に全損と
なった。

上記船主は、定期傭船者である申立人に対して、定期傭船契約に基づ
く安全港、安全岸壁提供に関する不履行があると主張し、上記船舶の全

損による損害賠償請求として、約 142 百万米ドル、金利及び訴訟費用の支払を求め、英国高等法院に提訴した。

(2) 訴訟の経過及び現状

英国高等法院(第 1 審)は、申立人に対して、上記船主への損害賠償金約 137.6 百万米ドル(約 136 億円)並びにこれに対する金利約 29 百万米ドル(約 29 億円)及び訴訟費用の支払を命じる判決を言い渡した。

他方、英国控訴院(第 2 審)は、当該第 1 審判決を取り消し、上記船主の申立人に対する請求は全て認められない旨の判断を行い、申立人の全面勝訴となった。

現在、上記船主の上告により、英国最高裁判所に上告審が係属している。

**第 8　労働組合の有無等**

陸上従業員は、社内労働組合として、第一中央汽船労働組合を昭和 35 年 10 月 1 日に結成している。また、海上従業員は、全国産業別単一労働組合である全日本海員組合に加入している。

平成 27 年 9 月 4 日現在、第一中央汽船労働組合の陸上従業員数は 87 名、全日本海員組合に加入している海上従業員数は 43 名となっている。

**第 9　会社の設立又は目的たる事業について官庁その他の機関の許認可等**

申立人の取得している免許、許可、認可、登録、認証、届出等(以下「許認可等」という。)については、「許認可等一覧表」(甲 14)記載のとおりである。

**第 10　関連事件の有無**

申立人の子会社及び関連会社のうち、STAR BULK CARRIER CO., S.A. について

は、申立人と同時に、貴庁に対して、再生手続開始申立てを行っている。

## 第11 外国倒産処理手続開始の有無

申立人について、申立日時点では外国倒産処理手続は開始されていない。

## 第12 再生計画案の作成方針についての申立人の意見

1 事業再生及び弁済計画の基本方針

申立人は、自主再建又はスポンサーの支援による再建を含め、申立人の事業価値の毀損を最小限とし、債権者への弁済の極大化を図る再生計画案を策定する方針である。

また、申立人は、再生手続開始後、傭船契約の見直しを船主に提案し、その変更や解除などを行い、船隊規模の適正化を実現することにより、申立人の収益状況を圧迫させ、本申立ての直接的な原因であった「逆ザヤ」状態（運賃収入に比して、傭船料が高止まりしている状態）を解消し、確実に利益を出せる収益体質に改善することを予定している。

また、弁済計画については、収益弁済による分割弁済、スポンサー支援による一括弁済など、事業再生の方針に沿った弁済計画案を策定する予定である。

2 今後の資金繰りについて

申立人の過去1年間の資金繰りは、「資金繰実績表」（甲15）の記載のとおりであり、上記第6の2のとおり、支払不能となるおそれがあったものの、今後については、再生債権者に対する弁済が禁じられ、また、傭船に係る逆ザヤを解消することにより、事業継続に支障がない状況を確保できる見込みである（甲16）。

3　破産との比較

(1) 債権者にとってのメリット

　　再生手続による場合、申立人の事業が継続されることにより継続企業価値が維持され、また、再生計画認可決定が確定することに伴う債務の減免等により、資金面及び財務面において申立人の安定した経営基盤が確保される見通しが立つため、事業を停止し、清算価値しか残らないこととなる破産手続による場合に比べて事業価値の毀損の程度は低い。

　　したがって、再生手続による場合、自主再建における収益弁済、又は、スポンサー支援に基づく一括弁済により、保存された継続企業価値をベースとした弁済が可能となるため、破産財団(現有財産)の換価等で弁済原資を捻出するのみの破産手続の場合と比較して、債権者に対する弁済原資を確保できる見込みが高く、債権者にとって有利である。

(2) 従業員にとってのメリット

　　上記第2の5のとおり、申立人は224人の従業員を雇用しているところ、破産手続が行われた場合、当該従業員等は解雇され職を失うことになる。

　　他方、再生手続による場合、事業を継続することにより、当該従業員等の雇用を継続することが可能となることから、破産の場合に比べ従業員にとって有利である。

(3) 小　　　括

　　以上より、再生手続によって申立人の事業の再生を図ることは、破産手続によるよりも債権者にとって有利であることは明白である。また、従業員への影響も含めれば、再生手続の有利性は一段と明らかである。

4    債権者、主要取引先及び従業員の協力の見込み

　　法的整理に伴う事業価値の毀損を考慮してもなお、再生債権者に対する相当の弁済率の再生計画案の策定は可能であり、また、運航の継続に最大限配慮することを予定しているため、債権者や主要取引先の協力を得られる見込みは高いと考えられる。

　　従業員についても、再生手続による事業継続により雇用の確保が図れることから、協力を得られる可能性は高いものと思料される。

## 第13　結　　語

　　よって、申立人につき、再生手続を開始する旨の決定を求めるため、本申立てに及ぶ次第である。

疎　明　資　料

| | |
|---|---|
| 甲第 1 号証 | 履歴事項全部証明書 |
| 甲第 2 号証 | 株主一覧表 |
| 甲第 3 号証 | 平成 27 年 6 月 26 日付組織図 |
| 甲第 4 号証の 1 | 陸上従業員就業規則 |
| 甲第 4 号証の 2 | 船員就業規則 |
| 甲第 4 号証の 3 | 陸上従業員給与規則 |
| 甲第 4 号証の 4 | 退職年金規則 |
| 甲第 5 号証 | 会社案内 |
| 甲第 6 号証 | 子会社・関連会社資本関係図 |
| 甲第 7 号証の 1 | 比較貸借対照表 |
| 甲第 7 号証の 2 | 比較損益計算書 |
| 甲第 8 号証の 1 | 第 66 期決算報告書 |
| 甲第 8 号証の 2 | 第 67 期決算報告書 |
| 甲第 8 号証の 3 | 第 68 期決算報告書 |
| 甲第 9 号証 | 所有不動産一覧表 |
| 甲第 10 号証の 1 | 賃貸物件一覧表 |
| 甲第 10 号証の 2 | 賃借物件一覧表 |
| 甲第 11 号証 | 貸借対照表（平成 27 年 6 月 30 日現在） |
| 甲第 12 号証の 1 | 債権者分類表 |
| 甲第 12 号証の 2 | 金融債権者一覧表 |
| 甲第 12 号証の 3 | その他貸付金債権者（船主、仲介業者等）一覧表 |
| 甲第 12 号証の 4 | デリバティブ債権者一覧表 |
| 甲第 12 号証の 5 | 社債権者一覧表 |
| 甲第 12 号証の 6 | 保証債権者一覧表 |

| | |
|---|---|
| 甲第 12 号証の 7 | リース債権者一覧表 |
| 甲第 12 号証の 8 | 関係会社債権者一覧表 |
| 甲第 12 号証の 9 | 一般債権者一覧表 |
| 甲第 12 号証の 10 | 公租公課債権者一覧表 |
| 甲第 13 号証 | 係属訴訟一覧表 |
| 甲第 14 号証 | 許認可等一覧表 |
| 甲第 15 号証 | 資金繰実績表（過去 1 年分） |
| 甲第 16 号証 | 資金繰予定表（今後 6 か月分） |

添　付　書　類

| | | |
|---|---|---|
| 1 | 疎明資料 | 原本又は写し各 1 通 |
| 2 | 取締役会議事録 | 1 通 |
| 3 | 資格証明書 | 1 通 |
| 4 | 委任状 | 1 通 |
| 5 | 定款 | 1 通 |

以　上

[English Translation]

**Petition for Commencement of Rehabilitation Proceedings**

September 29, 2015

To: The Tokyo District Court, Civil Division No. 20

Petitioner (Rehabilitation Debtor):   Daiichi Chuo Kisen Kaisha
14-4 Shintomi 2-chome, Chuo-ku, Tokyo, 104-8544

Representative of the Petitioner:    Masakazu Yakushiji, President

| Attorney for Petitioner | Shinnosuke Fukuoka |
|---|---|
| Same as above | Takashi Sonoo |
| Same as above | Hiroyuki Usuda |
| Same as above | Yoshihiko Hari |
| Same as above | Yuri Sugano |
| Same as above | Naokuni Kuwagata |
| Same as above | Tetsushi Konda |
| Same as above | Kotaro Fuji |
| Same as above | Takahiro Kato |
| Same as above | Akira Iizuka |
| Same as above | Kazuki Takada |
| Same as above | Tatsuaki Murakami |
| Same as above | Yujiro Katayama |
| Same as above | Kodai Kawanishi |
| Same as above | Itaru Matsumoto |

Nishimura & Asahi
Ark Mori Building, 12-32 Akasaka 1-chome,
Minato-ku, Tokyo, 107-6029
(Address for service)
Telephone:     03-5562-8760
Facsimile:     03-5561-9711

Attorney for the Petitioner:         Daisuke Shinobu

Nishimura & Asahi LPC, Osaka Office
Umeda Hankyu Building Office Tower 23F
8-1 Kakudacho, Kita-ku, Osaka 530-0017
Telephone:     06-6366-3013
Facsimile:     06-6366-3014

- 2 -

## I.    Object of Petition

The Petitioner seeks a ruling for the commencement of rehabilitation proceedings.

## II.   Overview of Petitioner

1.    Company Profile

The Petitioner's core business is marine transportation, and the purposes of the company, registered in its Certificate of All Historical Registered Matters (Petitioner's Evidence No. 1), are as follows:

(1)    Marine transportation business
(2)    Handling and managing marine, port and shore transportation
(3)    Sale and purchase of vessels
(4)    Repairing, cleaning and managing of vessels
(5)    Sale and purchase of machinery, spare parts, oil and tools for vessels, and of cargo-handling equipment and packing materials
(6)    Crew staffing business
(7)    Industrial waste collection and transportation business
(8)    Leasing, selling, purchasing, managing and brokering real estate
(9)    Sale and purchase of electric generators, fire extinguishers, home electronics, fertilizer, liquor and food items
(10)   Non-life insurance agency business and life insurance solicitation business
(11)   Loaning to, guaranteeing and investing in businesses
(12)   Services related to the businesses provided above

2.    Stock and Amount of Capital

The total number of authorized shares of the Petitioner as of March 31, 2015 is 1,213,000,000 shares.   The classes of shares issued are common shares, Class A shares, Class B shares, Class C shares, and Class D shares.   The number of issued shares are as follows: 413,260,000 in common shares, 31,400,000 in Class A shares and 8,500,000 shares in Class D shares.   No Class B and Class C shares have been issued.
The Petitioner's capital is 28,958,410,150 yen.

3.    Major Shareholders and Share Option Holders

The major shareholders of the Petitioner as of March 31, 2015 are as listed in the table below (Petitioner's Evidence No. 2).

|   | Common Shares (Shareholders) | Number of Shares Held (thousand shares) | Shareholding Ratio (%) |
|---|---|---|---|
| 1 | Mitsui O.S.K. Lines, Ltd. | 68,774 | 16.64 |
| 2 | MI-DAS Line S.A. (Standing proxy: Doun Kisen K.K.) | 14,707 | 3.56 |
| 3 | Mitsui Sumitomo Insurance Company, Limited | 13,054 | 3.16 |
| 4 | Daiwa PI Partners Co., Ltd. | 10,000 | 2.42 |
| 5 | Pedregal Maritime S.A. (Standing proxy: Mizuho Securities Co., Ltd.) | 8,730 | 2.11 |
| 6 | Green Spanker Shipping S.A. (Standing proxy: SMBC Nikko Securities Inc.) | 7,428 | 1.80 |
| 7 | Sumitomo Mitsui Banking Corporation | 5,710 | 1.38 |
| 8 | Japan Trustee Services Bank, Ltd. (for the re-trust for Sumitomo Mitsui Trust Bank, Limited/for the Sumitomo Mitsui Banking Corporation retirement benefit trust account) | 5,710 | 1.38 |
| 9 | Sumitomo Metal Mining Co., Ltd. | 5,352 | 1.30 |
| 10 | Southern Route Maritime, S.A. (Standing proxy: SMBC Nikko Securities Inc.) | 4,591 | 1.11 |
| 11 | Sun Lanes Shipping S.A. (Standing proxy: SMBC Nikko Securities Inc.) | 4,591 | 1.11 |
|   | Others (including own shares) | 264,619 | 64.03 |
| Total |  | 413,269 | 100 |

|   | Class A Shares (Shareholders) | Number of Shares Held (thousand shares) | Shareholding Ratio (%) |
|---|---|---|---|
| 1 | Mitsui O.S.K. Lines, Ltd. | 30,000 | 95.54 |
|   | Own shares | 1,400 | 4.46 |
| Total |  | 31,400 | 100 |

| | Class D Shares (Shareholders) | Number of Shares Held (thousand shares) | Shareholding Ratio (%) |
|---|---|---|---|
| 1 | Phoenix Capital Co., Ltd. | 1,396 | 16.42 |
| 2 | Daiwa PI Partners Co., Ltd. | 613 | 7.21 |
| | Own shares | 6,491 | 76.37 |
| Total | | 8,500 | 100 |

4.    Officers

The current officers of the Petitioner are as follows (Petitioner's Evidence No. 1).

| | |
|---|---|
| Presidents: | Masakazu Yakushiji, Koji Fujita |
| Directors: | Kosuke Kodaka, Masahiro Kanno, Toshihide Egawa, Susumu Kuwashima, Arata Nakajima |
| Auditors: | Koichi Nakagami, Kenichi Iyama (Outside Auditor), Hiroki Ishibashi (Outside Auditor) |
| Financial Auditor: | Deloitte Touche Tohmatsu LLC |

5.    Employees

The number of employees (including those of the overseas affiliates and branches) of the Petitioner is 224 (as of August 1, 2015), of which 162 are land-based employees (including 2 seconded workers), 23 are sea-based (crew), 9 are temporary staff and trainees, 1 is a part-time employee, 3 are contract employees, and 26 are local employees of the overseas affiliates and branches.

The Petitioner's organization and employee positioning are as indicated in the Organization Chart (Petitioner's Evidence No. 3).

Employment conditions of the employees are as provided for in the Land-Based Employment Regulations (Petitioner's Evidence No. 4-1), the Sea-Based (Crew) Employment Regulations (Petitioner's Evidence No. 4-2), Wage Regulations for Land-Based Employees (Petitioner's Evidence No. 4-3; regulations regarding the wages of sea-based employees (crew) are included in the Sea-Based Employment Regulations), and the Rules of Retirement/Resignation Payments (Petitioner's Evidence No. 4-4).

6.    Head Office and Branches

The head office and the branches of the Petitioner are as listed below (Petitioner's Evidence No. 5).

| Domestic | Location |
|---|---|
| Head Office | 14-4 Shintomi 2-chome, Chuo-ku, Tokyo |
| Kansai Office | Higobashi Rex Building 4F, 3-3 Edobori 1-chome, Nishi-ku, Osaka-shi |
| Wakayama Branch Office | c/o Nippon Steel & Sumitomo Metal Corporation, Wakayama Works 1850 Minato, Wakayama-shi |
| Kashima Branch Office | c/o Nippon Steel & Sumikin Logistics Kashima Co., Ltd. Hikari 3, Kashima-shi, Ibaraki |

| Overseas | Location |
|---|---|
| New York Office | 61 Broadway Suite 2501, New York, N.Y. 10006 U.S.A. |
| London Office | Vintner's Place, 68 Upper Thames Street, London EC4V 3BJ U.K. |
| Hong Kong Office | Office No. 706, 7th Floor, Tower 2 Admiralty Centre, No.18 Harcourt Road, Hong Kong |
| Shanghai Office | Rm 3104, 31/F, Chong Hing Finance Center, 288 Nan Jing Road West, Shanghai, China |
| Manila Office | Ground Floor, Enriqueta Bldg., 1675-1677 A. Mabini Street, Malate, Metro Manila, Philippines |
| Vietnam Office | V-Tower, 649 Kim Ma street, Ba Dinh District, Hanoi, Vietnam |
| Brisbane Office* | Level 2, 147 Coronation Drive, Milton, QLD 4064 Australia |

\*      The Brisbane office is not run by the Petitioner, but is outsourced to a third party.

7.      Subsidiaries and Affiliates

The subsidiaries and affiliates of the Petitioner as of the date of this Petition are as described in the Subsidiaries/Affiliates Capital Relation Chart (Petitioner's Evidence No. 6).

Of the subsidiaries, Star Bulk Carrier Co., S.A., which is filing a Petition for the commencement of rehabilitation proceedings with this Court simultaneously with this Petition, is a "*shikumisen*" company, as described in Part X below.  (A *shikumisen* company is a company incorporated in countries where tax systems are advantageous to shipping companies, such as Panama.  The company registers and holds its vessels under that country's flags, or enters into bareboat charters with third parties; however, the vessels are actually used for the business of the parent company in accordance with time charter agreements between the *shikumisen* company and its parent company.)

Domestic affiliates, such as Daiichi Chuo Kinkai Kaisha, which provides marine transportation services in Asian waters, Daiichi Chuo Marine Co., Ltd., which provides maintenance services for ocean-going vessels, and Daiichi Chuo Naiko Kaisha, which provides maintenance services for coastal vessels, are wholly owned subsidiaries of the Petitioner.

**III.    Details and Business Conditions of Petitioner**

1.    History of Petitioner

The petitioner was incorporated as a shipping company with tramper services (for both international and domestic) as its main business due to a merger between The First Shipping Co., Ltd. and Chuo Kisen Kaisha in 1960.   The Petitioner's core business is dry bulk (bulk cargo such as unpackaged grain, iron ore and other commodities), and it has owned a wide variety of vessels, providing tramper services as well as related services.

In addition to its domestic establishments, it opened its New York office in 1969, and has since then opened offices in Manila, Hong Kong, London and Vietnam as mentioned in Part II, 6 above.

2.    Overview of Petitioner's Business

The Petitioner's business is marine transportation, providing overseas shipping, coastal shipping and other related services.

An overview of such services are as described below.

(1)    Overseas Shipping Service

The overseas shipping service is categorized into special-purpose vessel services and tramper services according to the types of vessels and their purposes, and the Petitioner transports cargo via ocean routes.

The Petitioner's special-purpose vessel service division is in charge of transporting specific freight, in particular iron ore and coal for international and domestic steel mills by cape-size vessels (vessels with a deadweight capacity of over 150,000 tonnage).

The tramper service division is made of two sections: (1) the large-scale tramper service section, which uses panamax-size vessels (vessels with a deadweight capacity of over 70,000 tonnage) and handymax-size vessels (vessels with a deadweight capacity of over 40,000 tonnage) to transport cargo such as coal and nonferrous metals to electric power companies and general industries, and (2) the ocean tramper service section, which uses handy-size vessels (vessels with a deadweight capacity of up to 40,000 tonnage) to transport various cargo including grain.   Daiichi Chuo Kinkai Kaisha, a subsidiary of the Petitioner, transports various cargo using coastal trading vessels (with a deadweight capacity of up to approximately 20,000 tonnage) to regions such as Southeast Asia, China and Russia.

(2)    Coastal Shipping Service

The Petitioner transports cargo such as limestone, cement, coal, crushed stone, grain and general goods by special-purpose vessels and general cargo vessels within Japan for domestic consumers .

3.      Tramper Service—Core Business of Petitioner

(1)     Trampers

Unlike an ocean liners such as container ships that operate on a set route and set schedule, a tramper does not have a fixed schedule or ports-of-call, and are determined according to the request of cargo owners (customers). In general, a tramper often transports cargo by time chartering vessels owned by a third party, or by using self-owned vessels or vessels owned by its *shikumisen* subsidiary.   In such case, a time charter contract is entered into between a third-party vessel owner and the shipping company, and the charter hire (fees) are usually specified in time charter contracts.

Shipping companies enter into charter parties between its customers (cargo owners) to transport cargo.   A tramper is a vessel that transports cargo whenever and wherever the customers need.

(2)     Method of Determining Freight Rates

There are many tramper operators in the world, and freight rates are often determined by the global market, based on the balance between demand for shipping/transporting and supply of freight space.

The BDI (the Baltic Dry Index; published by the Baltic Exchange) is a leading indicator for ocean route dry bulk carriers, and is based on freight rates of trampers (the freight rate for 1985 was 1000, which serves as a benchmark for the index.)   Based on this index, together with shipping routes, vessel type and contract term, the freight rates are determined between cargo owners and shipping companies.

(3)     Vessel Types and Cargo

The number of vessels owned by the petitioner as of March 31, 2015 is as described in the following table by size, which is classified by deadweight capacity tonnage.

| Vessel Size | Owned Solely by Petitioner | Owned by Subsidiaries (Including Leased Vessels) | Chartered | Total |
|---|---|---|---|---|
| Cape-size (150,000 tonnage ~) | 1 | 3 | 20 | 24 |
| Panamax size (70,000 ~ 150,000 tonnage) | 1 | 5 | 23 | 29 |
| Handymax size (40,000 ~ 70,000 tonnage) | 0 | 2 | 21 | 23 |
| Handy size (20,000 ~ 40,000 tonnage) | 0 | 13 | 34 | 47 |
| Coastal waters vessels (~ 20,000 tonnage) | 0 | 12 | 31 | 43 |
| Vessels for coastal shipping | 5 | 3 | 11 | 19 |
| Total | 7 | 38 | 140 | 185 |

- 8 -

4.    Business Performance of Petitioner

The Petitioner's business performance for the past 10 years is as follows.

(Unit: million yen)

|  | 2006/3 | 2007/3 | 2008/3 | 2009/3 | 2010/3 | 2011/3 | 2012/3 | 2013/3 | 2014/3 | 2015/3 |
|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 80,096 | 106,314 | 166,627 | 162,539 | 100,771 | 118,270 | 127,115 | 129,246 | 152,586 | 123,790 |
| Operating Income | 9,525 | 11,893 | 32,588 | △3,060 | △5,425 | 2,917 | △11,646 | △20,030 | △9,164 | △16,343 |
| Ordinary Income | 9,525 | 12,181 | 31,306 | △2,118 | 4,262 | 1,861 | △11,775 | △20,128 | △4,366 | △14,256 |
| Net Income | 5,452 | 7,361 | 21,896 | △3,635 | △3,780 | 2,101 | △12,588 | △32,301 | △13,459 | △2,660 |

Consolidated

|  | 2006/3 | 2007/3 | 2008/3 | 2009/3 | 2010/3 | 2011/3 | 2012/3 | 2013/3 | 2014/3 | 2015/3 |
|---|---|---|---|---|---|---|---|---|---|---|
| Revenues | 88,142 | 119,234 | 179,918 | 175,367 | 111,842 | 130,377 | 139,047 | 140,451 | 165,155 | 152,267 |
| Operating Income | 10,566 | 13,525 | 35,244 | 528 | △4,496 | 4,890 | △10,154 | △18,370 | △6,681 | △13,190 |
| Ordinary Income | 10,069 | 13,105 | 32,969 | △928 | △5,388 | 1,166 | △11,002 | △18,563 | △8,584 | △13,966 |
| Net Income | 6,044 | 7,569 | 22,878 | △2,939 | △3,877 | 1,762 | △9,281 | △31,983 | △15,429 | △3,307 |

## IV.    Petitioner's Financial Condition (Assets and Liabilities)

1.    Assets (Balance Sheet Amount)

(As of June 30, 2015)

| Item | Amount (million yen) Non-consolidated | Amount (million yen) Consolidated |
|---|---|---|
| Current Assets | 33,076 | 41,199 |
| Tangible Fixed Assets | 9,399 | 61,921 |
| Intangible Fixed Assets | 44 | 117 |
| Investments and Other Assets | 11,983 | 4,054 |
| Total Assets | 54,502 | 107,292 |

The vessels owned by the Petitioner are as indicated in Part III, 3(3) above. Other assets of the Petitioner as of June 30, 2015, are as indicated on the Balance Sheet (as of June 30, 2015) (Petitioner's Evidence No. 11).

2.    Creditors (as of June 30, 2015)

(1)    Financial Creditors (Banks)
Total of 17 creditors          Total of 24,330,768,124 yen
Details are as indicated in the List of Financial Creditors (Banks) (Petitioner's Evidence No. 12-2).

(2)    Creditors with Loans Receivable (Vessel Owners, Broker, etc.)
Total of 34 creditors            Total of 2,285,933,759 yen
Details are as indicated in the List of Creditors with Loans Receivable (Vessel Owners, Broker, etc.) (Petitioner's Evidence No. 12-3).

(3)    Derivative Creditors
Total of 1 creditor            Total of 117,178,095 yen
Details are as indicated in the List of Derivative Creditors (Petitioner's Evidence No. 12-4).

(4)    Bond Holders (Private Placement Bonds)
Total of 37 creditors            Total of 4,419,419,497 yen
Details are as indicated in the List of Bond Holders (Petitioner's Evidence No. 12-5).

(5)    Guaranteed Creditors
Total of 26 creditors            Total of 76,254,279,805 yen
Details are as indicated in the List of Guaranteed Creditors (Petitioner's Evidence No. 12-6).

(6)    Lease Creditors
Total of 4 creditors            Total of 61,794,100 yen
Details are as indicated in the List of Lease Creditors (Petitioner's Evidence No. 12-7).

(7)    Affiliate Company Creditors
Total of 16 creditors            Total of 5,659,182,022 yen
Details are as indicated in the List of Affiliate Company Creditors (Petitioner's Evidence No. 12-8).

(8)    General Creditors
Total of 461 creditors            Total of 6,434,884,040 yen
Details are as indicated in the List of General Creditors (Petitioner's Evidence No. 12-9).

(9)    Tax and Public Charge Creditors
Total of 12 creditors            Total of 44,153,536 yen
Details are as indicated in the List of Tax and Public Charge Creditors (Petitioner's Evidence No. 12-10).

(10)    Total (Petitioner's Evidence No. 12-1)
Rehabilitation Creditors (including holders of secured claims (*betsujoken-tsuki saiseisaikensha*), which are defined in the Rehabilitation Act as rehabilitation claims with the right of separate satisfaction)
Total of 596 creditors            Total of 119,563,439,442 yen

**V.    Circumstances That Caused the Facts Constituting the Grounds for Commencement of the Rehabilitation Proceedings**

1.    History of the Petitioner and its Group Companies

The vessels of the maritime industry are generally grouped into 3 broad categories: a "tanker" designed to transport oil and other liquids, a "container vessel" designed to transport containerized cargo, and a "dry bulk carrier" designed to transport steel and grain products.  The Petitioner is a joint-stock company which mainly focuses its business on transporting dry bulk (bulk cargo) using tramp steamers.

The Petitioner conducts its tramper service business using various types of vessels, from cape-size ships to domestic vessels.

The "Daiichi Chuo Kisen Group", consisting of companies that conduct business in the field of shipping, vessel management, distributing cargo-handling equipment, real estate leasing, etc., has been earning customers' trust based on its comprehensive strengths, as well as by enforcing strict safety management through training crew members, ship maintenance, positioning of dockworkers, and installation of the most advanced equipment, etc.

2.    Characteristics of the Tramper Service

As described in Section III. 3. above, vessels are sometimes chartered to conduct tramper services.  In such cases, shipping companies like the Petitioner generally enter into time charter agreements (a contract between a ship owner and a charterer (the Petitioner) to hire a vessel for a specific period of time).

Charterers who hire vessels will transport cargo in accordance with a charter party executed between charterers and cargo owners (customers), and will receive payment of freight as compensation.  Shipping companies will then use this to pay the ship owners charter fees.

Aside from chartering vessels in accordance with long-term or short-term charter parties, shipping companies occasionally accept voyage charters through brokers for a specified number of voyages as well (vessels operated under voyage charters are hereinafter referred to as "voyage charter vessels").  As freight rates for voyage charter for overseas shipping are greatly influenced by the market, shipping companies with many voyage charter vessels that does not transport cargo on a predetermined schedule (but on the other hand must pay a fixed charter fee in accordance with long-term charter parties) inevitably assume large market risks.

3.    Maritime Bubble Years (Before the Lehman Shock)

From the second half of 2003, with the growth of developing countries (including the BRICs) and the expansion of imports due to China's practice of free trade, price fluctuations for bulk cargo such as iron ore and coal intensified and it marked the beginning of one of the biggest booms of the industry's history.  There was a sharp increase in seaborne trade, especially a rise in demand for cape-size vessels that ship iron-ore and coal in bulk.  There was also a sudden expansion of demand for all types of ships, from small to large-sized vessels.  As a result, the prices of newly-built vessels and charter fees, as well as prices of secondhand vessels

spiked, and at its peak, the charter fee elevated to $240,000/day.   The shipping industry had entered the "bubble years".

During the industry's bubble years, the Petitioner expanded its fleet, introduced its midterm management plan "Daiichi Vision 2010" in 2006, and shifted its focus to fleet expansion.   For the fiscal year ending March 2008, the Petitioner had a record-setting performance in sales, operating profit, ordinary profit and net income for the year.

4.    Sharp Decline in the Market Due to the Lehman Shock

(1)    Impact of the Lehman Shock on Maritime Market
After the Lehman Shock, there was a sizable drop in cargo movements worldwide.   In May 2008 (before the Lehman Shock), the BDI was 11,067, but took a plunge in September 2008, and dropped to 666 by December 2008.

(2)    Impact of the Lehman Shock on Petitioner's Business
The downturn in the shipping industry greatly impacted the Petitioner, whose core business is tramper services, and voyage charter vessels account for a large percentage of its business.

Before the Lehman Shock, as the Petitioner was working on expanding its fleet, the Petitioner had entered into many long-term time charter agreements between ship owners during the maritime bubble years and was obligated to pay a substantial amount in charter fees, whereas most charter party agreements are spot contracts, and freight rates are based on the then-stagnant maritime market.   Therefore, the charter fees the Petitioner had to pay were quite high, while freight charges paid to the Petitioner remained very low, and as a result, the Petitioner ended up in a "backwardation" in which the charter fees exceeded its freight revenue.

In addition, factors such as the increase in debt burden due to newly-built vessels, a lack of funding, the rise of the Japanese yen and the rise of fuel prices contributed to the Petitioner's worsening cash-flow problems.

(3)    Petitioner's Business Status at the Time of the Lehman Shock
For the fiscal year of March 2009 (right after the Lehman Shock), the Petitioner's operating profit showed a 98.5% decrease over the previous year's, there was an ordinary loss of 928,000,000 yen and current net loss of 2,939,000,000 yen (on a consolidated basis).   The business suffered a significant decrease in sales and profit compared to the year before when the Petitioner set a record for its greatest performance to date.

5.    Development of Management Plan and the Prolonged Market Stagnation

(1)    Status of Petitioner after the Lehman Shock
After 2009, the Petitioner began terminating charter parties in an attempt to reduce vessel expenses, and it regained profitability during the fiscal year ending March 2011.   Subsequently, the Petitioner tried to take advantage of the decreasing ship prices and resumed its fleet expansion in anticipation of market recovery.

However, the market continued to decline, and the Petitioner

posted a steep loss (ordinary loss) after the fiscal year ending March 2012, which resulted in the Petitioner stating the following in its annual security report for the fiscal year ending March 2013: "The maritime market has entered an unprecedented prolonged slump.   On top of that, there are factors such as the rise of the yen and fuel oil prices.   Due to the deteriorating income because of the "backwardation" of charter fees and worsening cash flow as a result of the increase in debt burden of newly-built vessels, there are material uncertainties related to events or conditions that may cast significant doubt upon our group's [the Petitioner and its group companies] ability to continue as a going concern."

(2)     Midterm Management Plan and Its Results

The Petitioner developed a 3-year midterm management plan (from the fiscal year ending March 2013 to March 2015) in November 2012, and raised 31,400,000,000 yen by issuing class A shares to the Petitioner's main shareholder, Mitsui O.S.K. Lines, Ltd., and other business partners in 2013.

An outline of the midterm management plan is as follows: (A) to properly adjust the scale of its fleet by increasing the percentage of medium and small-sized vessels (which are expected to be in high demand) and to secure a steady income, (B) to cut costs by terminating charter parties for about 20 of the high-cost vessels, and (C) to increase capital and secure operating funds by selling owned vessels and issuing classified stock, as well as deferring loans and charter fee payments.

However, the recovery of the medium and small-sized vessel market was moderate, and there was also a need to pay extensive cancellation fees in order to terminate charter parties of high-cost vessels causing "backwardation".

As a result, the Petitioner's ordinary loss for fiscal year 2013 was 8,584,000,000 yen, and 15,429,000,000 yen for fiscal year 2014 (on a consolidated basis; the same shall apply hereinafter).   The loss for fiscal year 2014 includes a provision for loss (5,900,000,000 yen) relating to the first instance verdict of a litigation (discussed in Section VII, 2 below) pending in England (the verdict orders the Petitioner to pay damages to the counterparty; as discussed below, the verdict was overturned on appeal).

(3)     Prolonged Market Stagnation

In March 2014, the Petitioner developed a new midterm management plan which reflected the market conditions of 2014, and took measures such as raising 8,500,000,000 yen in funds by issuing type D stocks to outside investors, downsizing its fleet, cost reductions and restructuring its tramper services business in Asian waters.   The plan anticipated the Petitioner's ordinary loss for fiscal year 2014 to be 3,300,000,000 yen and its net income to be 3,200,000,000 yen.

Under the new midterm management plan, the balance of payments of the tramper services (vessels up to 20,000DWT) in Asian waters (mainly Southeast Asia, China, Russia) improved due to a strengthening in cargo collections, efficient vessel allocations, and reductions in fuel and operational expenses.   Operating profit for the domestic shipping business also improved due to efficient vessel allocations, and the third quarter cumulative total for fiscal year 2014 was 422,000,000 yen.

However, market conditions in the shipping industry continued to deteriorate, and by the end of 2014, the cape-size vessel market reached an all-time low.   The gap between supply and demand for medium-sized vessels (excluding cape-size vessels) grew, and the market continues to fall.   In mid-February of 2015, the BDI hit a record-low.

(4)    Petitioner's Current Business Status

As a result, it became difficult for the Petitioner, who mainly focuses its business on transporting dry bulk using trampers (which is greatly influenced by the maritime market), to generate profit as its revenue continued to decline due to the market's prolonged stagnation, and the Petitioner has been stuck in the same inextricable situation.

The Petitioner's performance for the full fiscal year of March 2015 is as follows: 13,190,000,000 yen in operating loss, 13,966,000,000 yen in ordinary loss and 3,307,000,000 yen in net loss (including 3,412,000,000 yen as profit from the sale of vessels and 5,763,000,000 yen to reverse a provision for loss on litigation (after winning the lawsuit in England's appellate court)).

(5)    Recent Request to Ship Owners

As the Petitioner was faced with grim corporate earnings and tight cash-flow without being able to resolve its "backwardation", from February 2015, the Petitioner began requesting a 20% discount of charter fees or the cancellation of charter parties without penalty from dozens of domestic ship owners, to which a considerable number of owners agreed in March.   The Petitioner also began selling highly profitable self-owned vessels.

Although the Petitioner was able to improve its earnings and cash flow to a certain degree by taking the abovementioned measures, it did not experience a drastic improvement as outside circumstances (struggling market, etc.) failed to take a favorable turn.

## VI.    Facts Constituting Grounds for Commencement of Rehabilitation Proceedings

1.    Asset Deficiency

According to the Balance Sheet (Petitioner's Evidence No. 11), the Petitioner has a positive net worth (on a legal financial accounting basis) as of June 30, 2015, with 54,502,783,921 yen in assets and 46,795,310,126 yen in liabilities.

On the other hand, the Petitioner is experiencing backwardation due to long-term time charter agreements as mentioned above, and the Petitioner hasn't been able to post an operating profit from fiscal year 2011.   The consolidated operating results for the first quarter of fiscal year 2015 were 5,447,000,000 yen in operating loss and 5,663,000,000 yen in ordinary loss, and it is presumed that fiscal year 2015 will once again run a large deficit (as it did in fiscal year 2014).

Moreover, due to factors such as China's deteriorating economic conditions, it is unlikely that the dry bulk tramper market will take a favorable turn.

Therefore, there is a high risk of the Petitioner's financial condition deteriorating, and for it to fall into a state of asset deficiency.

2.      Risk of Insolvency

As mentioned in Part III, 4 above, the Petitioner has repeatedly reported large deficits, and there has already been an outflow of funds.

On the other hand, the total amount of the Petitioner's debt loan (including guarantees on loans taken out by foreign *shikumisen* companies) and corporate bonds is approximately 107,407,570,000 yen as of June 30, 2015.   However, under the Petitioner's current financial conditions, it would be difficult to continue paying the debts as stipulated in loan agreements, and there is a risk that the loans will be accelerated due to delayed payments, which would push the Petitioner into a state of insolvency.

Even if the Petitioner could make repayments by selling its vessels, it will undoubtedly be a significant hindrance to the continuation of the Petitioner's business.

3.      Conclusion

In light of the above, it is evident that there is a risk of the Petitioner falling into a state of asset deficiency and insolvency, which constitutes the grounds for a commencement of bankruptcy proceedings (Article 16, Paragraph 1 of the Bankruptcy Act, Article 21, Paragraph 1, first sentence of the Civil Rehabilitation Act), and that the Petitioner is unable to pay its debts that are due without it significantly hindering the continuation of its business (Article 21, Paragraph 1, second sentence of the Civil Rehabilitation Act).

## VII.   Litigation Related to Petitioner and Other Legal Proceedings or Dispositions Regarding Petitioner's Assets

1.      Proceedings Regarding Petitioner's Assets

As of the date of this Petition, there are no pending bankruptcy proceedings, civil rehabilitation proceedings, special liquidation proceedings, compulsory execution, provisional attachment, provisional disposition or public auctions as execution of security interests with regard to the Petitioner and its assets.

2.      Litigation Proceedings to which Petitioner is a Party

As of the date of this Petition, there is a litigation and an arbitration proceeding pending to which the Petitioner is a party (Petitioner's Evidence No. 13).   Below is an explanation of the pending litigation (No.1 of the said Evidence).

(1)      Outline of Litigation

The "Ocean Victory", a cape-size bulk carrier time-chartered by the Petitioner from the vessel owner (China National Chartering Corp.) to transport iron ore (based on a charter party between the Petitioner and the cargo owner), went aground at the port of Kashima on October 24, 2006, and became a total loss on December 27 of that year.

The vessel owner made claims against the charterer including the Petitioner for breach of the safe port warranty under the charter party, and filed a lawsuit with the High Court of Justice for approximately 142 million USD,

interest and legal costs in respect of the damages arising from the total loss of the ship.

(2)     Progress and Current Status of Litigation
        The High Court of Justice (in the first instance) handed down a judgment against the Petitioner ordering a payment of approximately 137.6 million USD (approximately 13.6 billion yen) in damages to the vessel owner, and approximately 29 million USD (approximately 2.9 billion yen) in interest and legal costs.
        However, the Court of Appeal (in the second instance) overturned the decision in the first instance and rejected the vessel owner's claims against the Petitioner, and the Petitioner became the prevailing party.
        The vessel owner filed an appeal, and the case is now pending before the UK Supreme Court.

## VIII.  Labor Union

The land-based employees formed the Daiichi Chuo Kisen Labor Union within the company on October 1, 1960.   The sea-based employees (crew) are a part of the All Japan Seamen's Union, an external industrial union.

As of September 4, 2015, there are 87 land-based employees in the Daiichi Chuo Kisen Labor Union, and 43 sea-based employees in the All Japan Seaman's Union.

## IX.  Permissions and Authorizations by Governmental Agencies and Other Authorities Obtained by Petitioner for Incorporation or Operation of Business

Licenses, approvals, authorizations, registrations, certifications, applications, etc. the Petitioner has obtained (the "licenses, etc.") are as listed in the List of Licenses, etc. (Petitioner's Evidence No. 14)

## X.  Related Cases

Of the Petitioner's subsidiaries and affiliates, STAR BULK CARRIER CO., S.A. has filed a petition for the commencement of civil rehabilitation proceedings concurrently with this Petition.

## XI.  Commencement of Insolvency Proceedings in Foreign Countries

There are no pending insolvency proceedings in foreign countries regarding the Petitioner at the time of this Petition.

## XII.  Petitioner's Opinion Regarding Preparation of Rehabilitation Plan

1.     Basic Policy for Business Rehabilitation and Repayment Plan

The Petitioner plans to minimize the damage to its business value, and develop a rehabilitation plan which maximizes payments to the rehabilitation creditors either by self-reconstruction or reconstruction supported by sponsors.

Also, after the commencement of rehabilitation proceeding, the Petitioner will improve its business structure to enhance profitability soon. Specifically, the Petitioner will properly adjust the number of vessels handled by the Petitioner by negotiating with vessel owners to alter or terminate the charter parties to resolve backwardation (a condition in which the charter fees exceeds its freight revenue), which is the direct cause of this Petition.

Moreover, the Petitioner will prepare a repayment plan in line with its business restructuring policy, including installment repayments based on revenue and full repayment with support from sponsors.

2.    Future Cash-Flow Management

The cash-flow management of the Petitioner for the past year is as described in the Cash-flow Management Results (monthly/year-to-date) (Petitioner's Evidence No. 15). Although there was a risk of the Petitioner becoming insolvent as mentioned in Part VI, 2 above, the Petitioner is expected to be able to continue its business without any hindrance as it will be prohibited from making payments to rehabilitation creditors under the rehabilitation proceedings, and also by eliminating backwardation caused by chartering vessels (Petitioner's Evidence No. 16).

3.    Comparison with Bankruptcy

(1)    Benefits for Creditors

In the case of civil rehabilitation proceedings where a petitioner may continue its business, the going concern value of the petitioner will be maintained. Also, due to the discharge of debts by confirmation of the approved civil rehabilitation plan, it is possible for the petitioner to obtain a stable management base (cash-wise and financially). Therefore, compared to bankruptcy proceedings where a bankrupt company shuts down its business and only its liquidation value remains, civil rehabilitation proceedings cause much less damage to the company's business value.

As such, civil rehabilitation proceedings are more advantageous to the creditors compared to bankruptcy proceedings because there is a higher chance of securing a source of payments to the creditors. More specifically, payments based on maintained going concern value are possible under the civil rehabilitation proceedings by making payments from revenues generated by self-reconstruction as a source of payment, or by making full payments with support from sponsors, whereas under bankruptcy proceedings, payment sources are produced only by converting the bankrupt estate (current estate in possession) into cash.

(2)    Benefits for Employees

Commencing the bankruptcy proceedings means that all 224 employees described in Part II, 5 above, will lose their jobs.

On the other hand, in the case of civil rehabilitation proceedings, as the company will continue its business and be able to keep employing the employees, it is more advantageous to the employees compared to a bankruptcy.

(3)    Summary

Therefore, it is evident that an attempt to rehabilitate the Petitioner's business by civil rehabilitation proceedings rather than bankruptcy proceedings is more

advantageous to the creditors.    The advantage is even more obvious when taking the effect on employees into account.

4.    Possibility of Cooperation from Creditors, Main Customers and Employees

Even if the damage to the Petitioner's corporate value caused by in-court insolvency proceedings is taken into consideration, it is still possible to develop a rehabilitation plan with a reasonable repayment rate, and the Petitioner is planning on making every effort to continue its operations.    As such, the chances of the Petitioner gaining cooperation from the creditors and main customers are high.

In addition, as job security will be ensured due to the continuation of the Petitioner's business through the civil rehabilitation procedure, the chances of the Petitioner gaining cooperation from its employees are also high.

**XIII.  Conclusion**

Therefore, we hereby petition for the civil rehabilitation proceedings of the Petitioner to be commenced.

## Petitioner's Evidence

| | |
|---|---|
| Petitioner's Evidence No. 1 | Certificate of All Historical Registered Matters |
| Petitioner's Evidence No. 2 | List of Major Shareholders and Share Option Holders |
| Petitioner's Evidence No. 3 | Organization Chart as of June 26, 2015 |
| Petitioner's Evidence No. 4-1 | Land-Based Employment Regulations |
| Petitioner's Evidence No. 4-2 | Sea-Based (Crew)   Employment Regulations |
| Petitioner's Evidence No. 4-3 | Wage Regulations for Land-Based Employees |
| Petitioner's Evidence No. 4-4 | Rules of Retirement/Resignation Payments |
| Petitioner's Evidence No. 5 | Company Profile |
| Petitioner's Evidence No. 6 | Subsidiaries/Affiliates Capital Relation Chart |
| Petitioner's Evidence No. 7-1 | Comparative Balance Sheet |
| Petitioner's Evidence No. 7-2 | Comparative Profit and Loss Statement |
| Petitioner's Evidence No. 8-1 | Financial Statement for Fiscal Year 2012 |
| Petitioner's Evidence No. 8-2 | Financial Statement for Fiscal Year 2013 |
| Petitioner's Evidence No. 8-3 | Financial Statement for Fiscal Year 2014 |
| Petitioner's Evidence No. 9 | List of Owned Real Estate |
| Petitioner's Evidence No. 10-1 | List of Leased Real Estate |
| Petitioner's Evidence No. 10-2 | List of Leasehold Estate |
| Petitioner's Evidence No. 11 | Balance Sheet as of June 30, 2015 |
| Petitioner's Evidence No. 12-1 | Summary of Creditors |
| Petitioner's Evidence No. 12-2 | List of Financial Creditors (Banks) |
| Petitioner's Evidence No. 12-3 | List of Creditors with Loans Receivable (Vessel Owners, Broker, etc.) |
| Petitioner's Evidence No. 12-4 | List of Derivative Creditors |
| Petitioner's Evidence No. 12-5 | List of Bond Holders |
| Petitioner's Evidence No. 12-6 | List of Guaranteed Creditors |
| Petitioner's Evidence No. 12-7 | List of Lease Creditors |
| Petitioner's Evidence No. 12-8 | List of Affiliate Company Creditors |
| Petitioner's Evidence No. 12-9 | List of General Creditors |
| Petitioner's Evidence No. 12-10 | Tax and Public Charge Creditors |
| Petitioner's Evidence No. 13 | List of Pending Litigation |
| Petitioner's Evidence No. 14 | List of Licenses, etc. |
| Petitioner's Evidence No. 15 | Cash-flow Management Results (monthly/year-to-date) |
| Petitioner's Evidence No. 16 | Cash-flow Management Schedule (for coming six months) |

## Attachments

| | | |
|---|---|---|
| 1. | Petitioner's Evidence | originals or photocopies of each |
| 2. | Minute of Board of Directors | one original |
| 3. | Certificate of Qualification | one original |
| 4. | Power of Attorney | one original |
| 5. | Articles of Association | one original |

# **Certificate of Translation**

I, Yuri Sugano, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Petition filed with the Tokyo District Court, Case No. Heisei 27 (2015) (Sai) 53, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date:    September 29, 2015

Yuri    Sugano

平成２７年（再）第５３号　再生手続開始申立事件

<div align="center">決　　　定</div>

東京都中央区新富二丁目１４番４号

<div align="right">再　生　債　務　者　第一中央汽船株式会社<br>代表者代表取締役　藥　師　寺　正　和</div>

<div align="center">主　　文</div>

再生債務者は，下記の行為をしてはならない。

<div align="center">記</div>

平成２７年９月２８日までの原因に基づいて生じた債務（次のものを除く。）の弁済及び担保の提供

租税その他国税徴収法の例により徴収される債務
再生債務者とその従業員との雇用関係により生じた債務
再生債務者の事業所の賃料，水道光熱費，通信に係る債務
再生債務者の事業所の備品のリース料
再生債務者の事業（海運事業）に必要な船舶の部品，燃油及び備品その他の物品又はサービスの購入等に係る債務
タグボート及び岸壁の使用に係る費用，水先案内料並びに入港税その他の再生債務者の事業（海運事業）のために港湾を利用するに際して負担する債務
集荷，貨物の積み揚げ，船舶の管理，整備及び修繕並びに船員等の手配その他の海運事業の維持に必要なサービスの業務委託又は請負に係る債務
航海用船の終了に伴う荷主との間での精算により生じる債務（契約解除による損害賠償債務その他の債務を除く。）
定期用船の終了に伴う船主又は貸船先との間での精算により生じる債務（契約解除による損害賠償債務その他の債務を除く。）
その他，航海継続の必要によって生じた債務
１００万円以下の債務

平成２７年９月２９日
東京地方裁判所民事第２０部

<div align="center">裁判長裁判官　　中　山　孝　雄</div>

<div align="center">裁判官　堀　田　次　郎</div>

<div align="center">裁判官　土　屋　　毅</div>

これは謄本である。

同日同庁

裁判所書記官　佐　藤　律　子 

[English translation]

Case No. Heisei 27 (2015) (Sai) 53

Order

14-4, Shintomi 2-chome, Chuo-ku, Tokyo
            Rehabilitation Debtor        Daiichi Chuo Kisen Kaisha
            Representative Person        Masakazu Yakushiji, President

Main Text

The Rehabilitation Debtor shall not conduct the following acts:

To pay and provide collateral against debts arising from acts on or before September 28, 2015, excluding those listed below:

Tax and other debts to be collected as provided for by the National Tax Collection Act

Debts arising from acts between the Rehabilitation Debtor and its employees based on their employment relationship

Rent for places of business, utilities expenses, communication expenses

Lease fees to pay for equipment necessary for the operation of the Rehabilitation Debtor's business

Debts arising from purchasing, etc. vessel components, fuel, equipment, other goods or services necessary for the operation of the Rehabilitation Debtor's business (marine transportation business)

Costs arising from the use of tugboats and quays, port charges such as pilotage fees and port dues, and other fees necessary for the use of ports for the operation of the Rehabilitation Debtor's business (marine transportation business)

Debts arising from collecting and loading cargo, maintaining and repairing vessels, making crew arrangements, and other outsourcing and subcontracting expenses necessary for the continuation of the marine transportation business

Debts to arise from adjustments between [the Rehabilitation Debtor and] cargo owners due to the expiration of voyage charters (excluding claims for damages or any other claims for termination of an agreement)

Debts to arise from adjustments between [the Rehabilitation Debtor and] vessel owners or lessors of vessel due to the expiration of time charter agreements (excluding claims for damages or any other claims for termination of an agreement)

Other debts arising from the need to continue voyages

Debts not exceeding 1,000,000 JPY

- 2 -

September 29, 2015

<div style="margin-left:2em">

Civil Division No. 20 of the Tokyo District Court
    Chief Judge:  Takao Nakayama
    Judge:       Jiro Horita
    Judge:       Takeshi Tsuchiya

</div>

This is a certified copy.

Same date, by the same court

Court Clerk:  Ritsuko Sato  [seal]

## **Certificate of Translation**

I, Yuri Sugano, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Temporary Restraining Order issued by the Tokyo District Court in Case No. Heisei 27 (2015) (Sai) 53, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date:    September 29, 2015

Yuri    Sugano

平成２７年（再）第５３号　再生手続開始申立事件

決　　　定

東京都中央区新富二丁目１４番４号

再　生　債　務　者　第一中央汽船株式会社

代表者代表取締役　薬　師　寺　正　和

主　　　文

1　第一中央汽船株式会社について監督委員による監督を命ずる。

2　監督委員として，次の者を選任する。

東京都千代田区丸の内３丁目３番１号　新東京ビル２２５区

東京丸の内法律事務所

弁護士　宮川　勝之

3　監督委員は，再生債務者が，民事再生法１２０条１項に規定する行為によって生ずべき相手方の請求権を共益債権とする旨の裁判所の許可に代わる承認をすることができる。

4　再生債務者が次に掲げる行為をするには，監督委員の同意を得なければならない。ただし，再生計画認可決定があった後は，この限りでない。

(1)　再生債務者が所有又は占有する財産に係る権利の譲渡，担保権の設定，賃貸その他一切の処分（常務に属する取引に関する場合を除く。）

(2)　再生債務者の有する債権について譲渡，担保権の設定その他一切の処分（再生債務者による取立てを除く。）

(3)　財産の譲受け（商品の仕入れその他常務に属する財産の譲受けを除く。）

(4)　貸付け

(5)　金銭の借入れ（手形割引を含む。）及び保証

(6)　債務免除，無償の債務負担行為及び権利の放棄

(7)　別除権の目的である財産の受戻し

(8)　事業の維持再生の支援に関する契約及び当該支援をする者の選定業務に関する契約の締結

(9)　外国の裁判所に対する承認援助事件の申立て

5　再生債務者は，平成２７年９月２９日以降毎月末日締切りにより，再生債務者の業務及び財産の管理状況についての報告書をその翌月１０日までに当裁判所及び監督委員に提出しなければならない。

ただし，再生計画認可決定があった後は，この限りでない。

平成２７年９月２９日

東京地方裁判所民事第２０部

裁判長裁判官　　　中　山　孝　雄

裁判官　堀　田　次　郎

裁判官　土　屋　　　毅

これは謄本である。

同日同庁

裁判所書記官　佐　藤　律　子



[English translation]

Case No. Heisei 27 (2015) (Sai) 53, Case of Petition for Commencement of Civil
Rehabilitation Proceedings

Order

14-4, Shintomi 2-chome, Chuo-ku, Tokyo

| Rehabilitation Debtor | Daiichi Chuo Kisen Kaisha |
| Representative Person | Masakazu Yakushiji, President |

Main Text

1.    This Court orders Daiichi Chuo Kisen Kaisha to be supervised by a supervisor.

2.    This Court appoints the person below as the supervisor:
      Shin-Tokyo Building, Suite 225, 3-1, Marunouchi 3-chome, Chiyoda-ku, Tokyo
      The Tokyo-Marunouchi Law Offices
      Katsuyuki Miyakawa, Attorney-at-Law

3.    The supervisor may give approval in lieu of the Court's permission to the effect that
      creditor's claims arising from the Rehabilitation Debtor's acts set out in Article 120,
      Paragraph 1 of the Civil Rehabilitation Act shall be treated as an administrative
      expense.

4.    The Rehabilitation Debtor shall not do the following without obtaining consent from the
      Supervisor.    However, this shall not apply once the Court confirms the rehabilitation
      plan:
      (1)    Assign, create security interests, lease, or in any way dispose of (excluding
             transactions made in the ordinary course of business) rights pertaining to assets
             owned or possessed by the Rehabilitation Debtor;
      (2)    Assign, create security interests, or in any way dispose of (excluding collecting
             claims by the Rehabilitation Debtor) rights pertaining to the Rehabilitation
             Debtor's claims;
      (3)    Acquire any assets (excluding supplies and other assets purchased in the
             ordinary course of business);
      (4)    Make loans;
      (5)    Obtain loans (including discounts of bills) and guarantees;
      (6)    Release obligations, assume debts without consideration, or waive rights;
      (7)    Redeem collateral for a right of separate satisfaction;
      (8)    Execute any contracts relating to endorsing the suspension or rehabilitation of
             business operations, or any contracts relating to selecting a party to provide such
             support; and
      (9)    File petitions for recognition of Japanese civil rehabilitation proceedings with
             foreign courts.

5.    Beginning September 29, 2015, the Rehabilitation Debtor shall prepare a report on the
      condition of their business and the administration of their property on the last day of
      every month, and shall submit the report to the Court and the Supervisor by the tenth of

the following month.    However, this shall not apply once the Court confirms the rehabilitation plan.

September 29, 2015

Civil Division No. 20 of the Tokyo District Court
Chief Judge:    Takao Nakayama
Judge:          Jiro Horita
Judge:          Takeshi Tsuchiya

This is a certified copy.

Same date, by the same court

Court Clerk:    Ritsuko Sato    [seal]

## **Certificate of Translation**

I, Yuri Sugano, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the Supervision Order issued by the Tokyo District Court in Case No. Heisei 27 (2015) (Sai) 53, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date:    September 29, 2015

Yuri     Sugano

平成 27 年(再)第 53 号　再生手続開始申立事件

---

（監督委員意見）

下記申請につき、同意する。

平成 27 年 9 月 29 日

監督委員　弁護士　宮川　勝之 

---

平成 27 年 9 月 29 日

監督委員　弁護士　宮川　勝之先生

# 同　意　申　請　書　（1）

## （海外における再生手続承認の申立て）

再 生 債 務 者　　　第 一 中 央 汽 船 株 式 会 社

代表者代表取締役　　　藥 師 寺　　正　　和

上記代理人弁護士　　　福　　岡　　真 之 介 

**第1　同意を求める事項**

1　　再生債務者が、アメリカ合衆国の連邦倒産裁判所に対して、同国の連邦破産法第 15 章の規定に基づいて、本再生手続の承認（当該承認の申立後承認前の期間における仮の救済手続も含むこととし、以下「アメリカ合衆国における手続承認」という。）を申し立てること

2　　再生債務者が、カナダの裁判所に対して、本再生手続の承認（当該承認の申立後承認前の期間における仮の救済手続も含むこととし、以下「カナダにおける手続承認」という。）を申し立てること

3　　再生債務者が、オーストラリア連邦の裁判所に対して、同国の Cross-Border Insolvency Act に基づいて、本再生手続の承認（当該承認の申立後承認前の期間における仮の救済手続も含むこととし、以下「オーストラリア連邦における手続承認」という。）を申し立てること

4　　再生債務者の代表取締役である薬師寺正和が、アメリカ合衆国、カナダ及びオーストラリア連邦における手続承認について、外国代表者(Foreign Representative)としての権限を行使すること。

**第2　同意を求める理由**

　　以下では、1 においてアメリカ合衆国における手続承認を申し立てる必要性を、2 においてカナダ及びオーストラリア連邦における手続承認を申し立てる必要性を述べ、3 において、上記 3 か国における手続承認の申立てを行うことに関する相当性を述べる。

**1　アメリカ合衆国における手続承認を申し立てる必要性**

**（1）再生債務者の財産に対する差押えのおそれがあること**

　　ア　再生債務者が用船する船舶内の燃油に対する差押えのおそれがあること

　　　　アメリカ合衆国では、海事上の請求権を有する債権者は、連邦裁判所の管轄内に債務者が存在せず、かつ、同管轄内に債務者の所有する財産が存在する場合には、連邦裁判所の命令によって債務者に帰属する財産を差し押さえることができる（いわゆる「ルールBに基づく差押え[1]」。）。

　　　　これにより、再生債務者に対して海事上の請求権を有する債権者は、当該債権に基づいて、連邦裁判所の管轄内に所在する再生債務者に帰属する財産に対して、差押えを行うことができる。

　　　　本再生手続開始の申立て後に、再生債務者が用船した数隻の船舶が、アメリカ合衆国内の港に寄港する可能性がある。当該船舶は、再生債務者が船主から用船契約に基づいて用船しているものであり、当該船舶の所有権は船主

---

[1]　Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions の Rule B を根拠とする。

のもとにある。他方で、用船した船舶内の燃油は用船者において調達すること
とになっているから、当該燃油は再生債務者の資産を構成する。

　　したがって、再生債務者に対する海事上の請求権を有する債権者は、本再
生手続開始の申立て後に、連邦裁判所管轄内に所在する再生債務者の財産で
ある、再生債務者が用船する船舶内部の燃油につき、ルールBに基づく差押
えを行うおそれがある。

イ　再生債務者が決済に使用する預金口座に対する差押えのおそれがあること

　　連邦裁判所管轄内には、上記アの燃油のほかに、再生債務者がアメリカ合
衆国内での運賃の受け取りや取引先への支払いに使用する預金口座が存在す
る。この預金口座も連邦裁判所の管轄内に所在する再生債務者に帰属する財
産であるから、上記アと同様に、再生債務者に対する海事上の請求権を有す
る債権者によりルールBに基づく差押えを受けるおそれがある。

## (2) 再生債務者の財産が差し押さえられると、再生債務者の事業継続に重大な支障が生じること

　　燃油を差し押さえられることにより、当該燃油を動力源とする船舶の運航
が停止することになる。

　　海運業を営む再生債務者にとって、船舶をスケジュールどおりに運航し、
積荷をスケジュールどおりに揚地に到着させることは、顧客(荷主)との関係
で最も重視される要素である。したがって、仮に一度でも船舶の運航が停止
し、スケジュールどおりの運航ができない事態が生じると、再生債務者の海
運業者としての信用が失墜することにより、事業継続に重大な支障が生じる

 こととなる。

　また、アメリカ合衆国における取引に関する決済口座が差し押さえられた場合にも、取引業者に対する支払いが滞ることにより、再生債務者の信用が失墜し、事業継続に重大な支障が生じることとなる。

## (3) アメリカ合衆国における手続承認の効力

　連邦破産法第 15 章に基づき、外国主手続として外国倒産処理手続の承認を受けると、アメリカ合衆国以外の国の倒産手続の効力がアメリカ合衆国内に及ぶことになる。その効力の中には、債務者の財産に対する執行停止効（いわゆるオートマティック・ステイ）も含まれるから、手続承認を受けることにより、債権者による債務者の資産に対する執行手続が停止される。

　また、連邦倒産裁判所は、手続承認の申立てから承認の効力発生までの間の期間につき、債務者の財産を保全するため、または債権者の利益を保全するための緊急の必要性がある場合には、申立てにより、当該期間の間、仮の救済を許可することができる。仮の救済の許可を受けることにより、上記期間の間、債務者の財産に対する執行が停止される。

　したがって、アメリカ合衆国における手続承認及び仮の救済の許可を受けることにより、再生債務者において、上記(2)で述べた事業継続上の支障を回避することが可能である。

## (4) 小　　　括

　以上より、アメリカ合衆国における手続承認を申し立てる必要性が認められる。

2　カナダ及びオーストラリア連邦における手続承認を申し立てる必要性

(1) 再生債務者が所有する船舶に対する差押えのおそれがあること

　　　本再生手続開始後に、再生債務者の所有船舶が、カナダ又はオーストラリ
　　ア連邦内の港に寄港する可能性がある。
　　　日本における再生手続に基づいて弁済を停止する一方で、再生債務者の所
　　有船舶の寄港予定地であるカナダ及びオーストラリア連邦において当該弁済
　　の停止につき何らの手当てを行わないと、各寄港地において、再生債務者の
　　債権者が、その一般財産としての当該船舶に対して差押えを行う等、強制的
　　な債権回収手段を講じる可能性が高い。

(2) 再生債務者の所有船舶が差し押さえられると、再生債務者の事業継続に重
　　大な支障が生じること

　　　再生債務者の所有船舶が差し押さえられることにより、当該船舶の運航に
　　支障が生じることとなることは明らかである。このような事態が起こった場
　　合に、再生債務者の事業継続上生じる不利益の重大性は、上記 1(2)におい
　　て述べたとおりである。
　　　さらに、再生債務者の所有船舶は、それぞれ収益性が高く事業上非常に重
　　要である専用船として運航していることから、当該専用船の荷主からの信頼
　　を失うことが、再生債務者の事業の再建全体に与える悪影響は甚大である。

(3) カナダ及びオーストラリア連邦における手続承認の効力

　　　カナダ及びオーストラリア連邦において、外国主手続として外国倒産処理

手続の承認を受けると、当該各国以外の国の倒産手続の効力が当該各国内に及ぶことになる。その効力の中には、債務者の財産に対する執行停止効も含まれるから、手続承認を受けることにより、債権者による債務者の資産に対する執行手続が停止される。

また、カナダ及びオーストラリア連邦においても、当該各国の裁判所は、手続承認の申立てから承認の効力発生までの間の期間につき、債務者の財産を保全するため、または債権者の利益を保全するための緊急の必要性がある場合には、申立てにより、当該期間の間、仮の救済を許可することができる。仮の救済の許可を受けることにより、上記期間の間、債務者の財産に対する執行が停止される。

したがって、カナダ及びオーストラリア連邦における手続承認及び仮の救済の許可を受けることにより、再生債務者において、上記(2)で述べた事業上の支障を回避することが可能である。

(4) 小　　　括

以上より、カナダ及びオーストラリア連邦における手続承認を申し立てる必要性が認められる。

3　手続承認を申し立てる相当性

上記 1(2)及び 2(2)において述べたとおり、アメリカ合衆国におけるルール B に基づく用船内の燃油及び預金口座に対する差押え並びにカナダ及びオーストラリア連邦における再生債務者の所有船舶に対する差押えにより、再生債務者に生じる事業上の支障は、非常に大きい。したがって、このような差押えを回避するための方策として、上記各国における手続承認を申し立

てる必要性は高い。

　他方で、各国における手続承認を申し立てるに際してかかる費用は、1 か国毎に数百万円程度という規模であり、船舶の運航に支障が生じた場合の不利益を回避するためのコストとしては、相当の範囲内であるといえる。

　以上より、上記各国において手続承認を申し立てることにつき、相当性が認められる。

第3　結　　語

　以上より、アメリカ合衆国、カナダ及びオーストラリア連邦における手続承認を申し立てることは必要かつ相当であるといえるので、本申請に及ぶ次第である。

<div align="right">以　　上</div>

[English  Translation]


Case  No.  Heisei  27  (2015)  (Sai)  53

Case of Petition for Commencement of Civil Rehabilitation Proceedings

---

(Supervisor's Opinion)

I hereby consent to the application below.

September 29, 2015

Supervisor:    Katsuyuki Miyakawa, Attorney-at-Law    [Seal]

---

September 29, 2015

To: Supervisor, Katsuyuki Miyakawa, Attorney-at-Law


# Application for Consent of Supervisor (1)

## (Filing of Petitions for Recognition of Japanese Civil Rehabilitation Proceedings with Foreign Courts)


Rehabilitation Debtor :        Daiichi Chuo Kisen Kaisha

President:        Masakazu Yakushiji


Attorney for Rehabilitation Debtor:        Shinnosuke Fukuoka [Seal]

## I.    Request for Consent

1.  For the Rehabilitation Debtor to file a petition with the United States Bankruptcy Court for recognition of the Japanese civil rehabilitation proceedings as the foreign main proceeding pursuant to Chapter 15 of the US Bankruptcy Code (the "Chapter 15 Recognition"; including an application for preliminary relief for the period between the filing of the chapter 15 petition and the entry of a recognition order).

2.  For the Rehabilitation Debtor to file a petition with a Canadian court for recognition of the Japanese civil rehabilitation proceedings as the foreign main proceeding (the "Canadian Recognition"; including an application for a preliminary injunction from the time of filing the petition to when an order granting recognition is issued).

3.  For the Rehabilitation Debtor to file a petition with an Australian court for recognition of the Japanese civil rehabilitation proceedings as the foreign main proceeding pursuant to the Cross-Border Insolvency Act (the "Australian Recognition"; including an application for a preliminary injunction from the time of filing the petition to when an order granting recognition is issued).

4.  For Masakazu Yakushiji, President of the Rehabilitation Debtor, to act as the Foreign Representative for the US, Canadian and Australian recognition proceedings.

## II.    Reasons for Application

Section 1 below describes why it is necessary to file for the Chapter 15 Recognition, Section 2 describes why it is necessary to file for the Canadian and Australian Recognition, and Section 3 describes why it is reasonable to file such petitions in the abovementioned countries.

### 1.  Necessity of Filing for Chapter 15 Recognition

#### (1)    Risk of Attachment

(a)  Risk of attachment of fuel on board vessels chartered by Rehabilitation Debtor

In the United States, creditors with maritime claims may attach the assets of debtors after obtaining a writ from the court if (1) the debtor cannot be found

2

within the district of the court in which the action is commenced and (2) property belonging to the debtor is present in the district ("Rule B attachment[1]").

Therefore, creditors with maritime claims against the Rehabilitation Debtor may attach the Rehabilitation Debtor's assets present within the court district.

Of the vessels chartered by the Rehabilitation Debtor, there is a possibility that several of them will call into US ports after the Japanese rehabilitation procedures have been filed.   These vessels are chartered by the Rehabilitation Debtor from vessel owners in accordance with the charter parties, and the ship owners have ownership of the vessels.   On the other hand, because the fuel on board the chartered vessels is procured by the charterer, the said fuel is an asset of the Rehabilitation Debtor.

As such, there is a risk that creditors with maritime claims against the Rehabilitation Debtor might, after the Japanese rehabilitation procedures have been filed, seek attachment of the Debtor's assets present within the court district (i.e. fuel on board vessels chartered by the Rehabilitation Debtor) under Rule B.

(b)  Risk of attachment of Rehabilitation Debtor's bank accounts used to make payments

In addition to the fuel mentioned in (a) above, the Rehabilitation Debtor has bank accounts which are used to receive domestic (US) freight fees and make payments to business associates.   As these accounts are assets of the Rehabilitation Debtor that exist within the court district, in addition to the fuel, there is a risk that creditors with maritime claims against the Rehabilitation Debtor might seek attachment of the accounts under Rule B as well.

**(2)    Attachment of Rehabilitation Debtor's Assets Will Hinder Continuation of Business**

If the Rehabilitation Debtor's fuel on board the chartered vessels is attached, the operation of the vessels will have to be suspended.

---

[1]  Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions

3

For the Rehabilitation Debtor who runs a shipping business, being able to operate the vessels and transport the cargo as scheduled is the most important element in its relationship with customers (cargo owners).   Therefore, if there are service disruptions and the vessels cannot be operated as scheduled, even if this happens only one time, the Rehabilitation Debtor will lose its credibility as a shipping company, which will significantly hinder the continuation of its business.

If the Rehabilitation Debtor's bank accounts used for business in the US are attached, payments to customers and business associates will be delayed, and the Rehabilitation Debtor will lose its credibility, which will cause significant hindrance to the continuation of its business as well.

**(3)      Effect of Chapter 15 Recognition**

If an insolvency proceeding outside the US is recognized as the foreign main proceeding under Chapter 15 of the Bankruptcy Code, such foreign insolvency proceeding will have legal effect within the US.   One of the effects is a stay of actions against a debtor and its assets ("automatic stay").   Therefore, when a foreign insolvency proceeding is recognized, any action by any creditor against the debtor or the debtor's property will be prohibited.

In addition, the Bankruptcy Court may grant provisional relief during the period between the filing of the chapter 15 petition and the entry of a recognition order where relief is urgently needed to protect the assets of the debtor or the interests of the creditors.   When preliminary relief is granted, any actions against the debtor and its property will be stayed during the gap period.

As such, if the Rehabilitation Debtor is granted Chapter 15 Recognition and preliminary relief, it will be able to avoid the damage mentioned in (2) above.

**(4)      Summary**

For the reasons mentioned above, it can be said that filing for a Chapter 15 Recognition is necessary.

**2.   Necessity of Filing for Canadian and Australian Recognition**

**(1)      Risk of Attachment of Vessels Owned by Rehabilitation Debtor**

There is a possibility that the vessels owned by the Rehabilitation Debtor will call into the ports in Canada and Australia.

4

As payments to creditors will be suspended due to the Japanese civil rehabilitation proceedings, there is a high risk of creditors taking compulsory debt collection actions in Canada and Australia (where such vessels are scheduled to make port calls), such as attaching vessels, unless measures are taken to prevent such action.

**(2)    Attachment of Rehabilitation Debtor's Vessels Will Hinder Continuation of Business**

An attachment of the Rehabilitation Debtor's vessels will undoubtedly hinder its shipping operation, and the severity of the damage this will cause to the Rehabilitation Debtor's business is as described in Section 1 (2) above.

The Rehabilitation Debtor's self-owned vessels are highly profitable and are considered to be a crucial part of its special-purpose vessel business.    Therefore, losing cargo owners' trust will cause immeasurable damage to the reorganization of the Rehabilitation Debtor's business.

**(3)    Effect of Canadian and Australian Recognition**

If an insolvency proceeding outside Canada and Australia is recognized as the foreign main proceeding, such foreign insolvency proceeding will have legal effect within these two countries.    One of the effects is a stay of actions against a debtor and its assets.    Therefore, when a foreign insolvency proceeding is recognized, any action by any creditor against the debtor or the debtor's property will be prohibited.

In addition, the courts in Canada and Australia may also grant provisional relief during the period between the filing of the petition and the entry of a recognition order where relief is urgently needed to protect the assets of the debtor or the interests of the creditors.    When preliminary relief is granted, any actions against the debtor and its property will be stayed during the gap period.

As such, if the Rehabilitation Debtor is granted the Canadian and Australian Recognition as well as preliminary relief, it will be able to avoid the damage mentioned in (2) above.

**(4)    Summary**

5

For the reasons mentioned above, it can be said that filing for Canadian and Australian Recognition is necessary.

**3.   Reasonableness of Filing for Recognition**

As mentioned in Section 1(2) and 2(2) above, a Rule B attachment in the US of fuel on board chartered vessels and bank accounts, as well as attachment of the Rehabilitation Debtor's self-owned vessels in Canada and Australia will cause significant problems for the continuation of the Rehabilitation Debtor's business.   In order to prevent such attachment, there is substantial need to file for recognition procedures in the abovementioned countries.

On the other hand, the fees needed to file the petitions are about several million yen for each country, which is within a reasonable range of costs necessary to avoid detriment in the event that the Rehabilitation Debtor's shipping business is hindered.

As such, it is reasonable to file for recognition procedures in each country mentioned above.

**III.   Conclusion**

This application is made as it can be said that it is necessary and reasonable to file petitions for Chapter 15 Recognition, Canadian Recognition and Australian Recognition for the reasons mentioned above.

End

6

# **Certificate of Translation**

I, Yuri Sugano, Attorney-at-Law, hereby certify that this is a true and accurate translation from Japanese to English of the "Application for Consent of Supervisor (1)" with the court-appointed supervisor's consent for Case No. Heisei 27 (2015) (Sai) 53 of the Tokyo District Court, Case of Petition for Commencement of Civil Rehabilitation Proceedings.

Date:    September 29, 2015

Yuri    Sugano